EDWARD SMITH, Plaintiff-Appellant, *v.* GENERAL PAVING COMPANY, Defendant-Appellee.

Third District   No. 77-401

Opinion filed April 10, 1978.

Sheldon W. Reagan, of Kankakee, for appellant.

Stephen L. Corn and Gregory C. Ray, both of Craig and Craig, of Mattoon, for appellee.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

This appeal was brought by the plaintiff, Edward Smith, from a final order of the Circuit Court of Kankakee County allowing the defendant's motion for a directed verdict as to each count of the plaintiff's four count

complaint at the close of the plaintiff's evidence. The defendant, General Paving Company, was in the process of constructing a highway adjacent to a building owned by the plaintiff and in which the plaintiff operated a tavern and a garage business and resided in an upstairs apartment with his wife and family.

The complaint sought damages arising out of a fire in which his building burned down. Of the four counts of the complaint, the first, second and fourth counts were based on negligence law and the third count was based on the doctrine of *res ipsa loquitur*. In short, the complaint alleged that the drainage culvert under the highway, which would drain the immediate area, was blocked by plywood, forms and other debris. It further alleged that because of the blocked drainage, the area around the plaintiff's place of business was flooded when it rained heavily on December 24, 1965. The allegations indicated that the flooding caused an electrical fire in the plaintiff's building and prevented the fire department from reaching the building once the fire started.

During the trial, the plaintiff called several witnesses. Ray Dieter, operator of a hardware store and Culligan soft water service outlet in the vicinity of the plaintiff's building, testified that, prior to the construction work, there existed a culvert allowing drainage under the existing highway, that a new culvert was being constructed under the new highway but that new culvert was apparently plugged up with debris. Mr. Dieter recalled other rains, prior to the highway construction in question, of 5 to 6 inches, which was his understanding of the quantity of rain falling on December 24, 1965, but he could not recall any flooding problems.

Russell Sadler, a member of the Chebanse Fire Department, an organization of volunteers, testified that, when he came upon the scene of the fire, he was unable to enter the premises because of heavy smoke. Moreover, he and the other firemen were delayed between 20 and 30 minutes because they had to wait for the electricity to be cut off from the building.

Mr. Sadler added that the water was a foot and a half deep in the building. On direct examination, he also stated that, upon entering the building the first time, he observed a lot of flashes, like sparks. When he started back in the second time, he said he observed arcing and flashing. However, on cross-examination, Mr. Sadler, although he saw what appeared to be arcing, admitted that he did not observe any flames on either occasion because of the density of the smoke.

Another member of the Chebanse Fire Department, Elwood Winterroth, testified that the water, which he described as knee deep, presented a problem in fighting the fire. Because of the water, he was unsure of his footing, he was unable to see the hose, and at one time he tripped over the hose and went sprawling. Mr. Winterroth also testified

that he could see flashes of fire but he was unable to confirm whether it was merely sparking or something burning. Once the firefighters entered the north end of the building, Mr. Winterroth testified that they had to pull the hose out because the fire was too hot.

Mr. Dieter, recalled as a witness, testified he had an opportunity to observe the building the day following the fire. On that occasion he observed the fuse box, which appeared to him to have been charred from heat rather than burned from the fire. The fuses were inside the box, and both were burned out, but Mr. Dieter admitted he had no knowledge of when the fuses burned out.

Lastly, the plaintiff testified that he closed his tavern at about 8 p.m. because there was water in the parking lot. Shortly thereafter he went to bed, but his wife awoke him at approximately 12:30 or 1 a.m., indicating she smelled smoke.

Following the presentation of this evidence, the trial court directed a verdict for the defendant. From this determination the plaintiff appealed.

■■ ■ A verdict is to be directed only in cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) One of the elements of negligence which must be proven by the plaintiff to establish a *prima facie* case of negligence is that the defendant's breach of a duty to the plaintiff was the proximate cause of the plaintiff's injury. (*Clinton v. Commonwealth Edison Co.* (1st Dist. 1976), 36 Ill. App. 3d 1064, 344 N.E.2d 509.) Even when the doctrine of *res ipsa loquitur* is properly applied to a case, the plaintiff must still prove that his injuries were proximately caused by the defendant. (Illinois Pattern Jury Instruction, Civil, No. 22.01 (2d ed. 1971) (hereinafter IPI Civil).) In a proper case, the doctrine of *res ipsa loquitur* allows the trier of fact to infer that a defendant breached a duty to an injured plaintiff because the instrumentality which caused the injury was under the control or management of the defendant, the plaintiff did not contribute to the injury and the injury is such that it could not have occurred except for the negligence of the defendant. IPI Civil No. 22.01.

This court has earlier ruled that this fact situation presents an appropriate case for plaintiff to plead *res ipsa loquitur*. (*Smith v. General Paving Co.* (3d Dist. 1974), 24 Ill. App. 3d 858, 321 N.E.2d 689.) However, we also decided in that opinion that the plaintiff must prove proximate causation even though *res ipsa loquitur* was appropriately pleaded.

■■ As to all the counts of the complaint, the plaintiff failed to establish that the defendant's acts were the cause in fact or the proximate cause of the plaintiff's injuries. There is no proof that the flooding caused the fire at all. Although there is some evidence that there may have been arcing,

there is no connection between this arcing and the fire. In essence, the plaintiff has failed to prove the *sine qua non*, that, but for this flooding, the fire would not have occurred. No expert testimony was presented to establish the exact cause of the fire, and a reasonable mind could conjure any number of other causes, including the failure of fuses to properly blow or the insertion of oversized fuses. The plaintiff can not shift the burden of proving the cause of the fire to the defendant merely by raising a possibility that the defendant's act caused the fire.

■■ Count II of the complaint alleged that the flooding "prevented the Chebanse Fire Department and the surrounding area fire departments from being able to reach the plaintiff's place of business heretofore referred to and rendered them incapable of effectively fighting or extinguishing the fire." The evidence established that the firemen reached the building in spite of the water. Mr. Sadler testified he was forced out of the building initially because of the heavy smoke. Mr. Winterroth testified that the firefighters had to pull their hose out of the building because the fire was too hot. There was some evidence of delay because of the need to avoid the possibility of electrocution of the firemen. No evidence, however, was presented to indicate that the cutting off of electrical power to a burning building is not ordinarily a safety precaution to be exercised before water is pumped into any burning building, even though the building may not be partially flooded.

Accordingly, we approve of the allowance of the defendant's motion for a directed verdict and the judgment of the Circuit Court of Kankakee County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.