GLEN JOHNSON, Plaintiff-Appellant, *v.* BURLINGTON NORTHERN, INC., *et al.*, Defendants-Appellees.

Third District    No. 81-531

Opinion filed June 10, 1982.

Peter F. Ferracuti & Associates and John F. Vickers, of Brusatte & Vickers, both of Ottawa, for appellant.

Donald Flayton, of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Safeway Store, Inc.

Michael T. Reagan, of Herbolsheimer, Lannon, Henson & Duncan, of La Salle, for appellee ACF Industries, Inc.

Kenneth J. Wysoglad, John Newell, and Michael L. Sazdanoff, all of Chicago, for appellee Burlington Northern, Inc.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, Glen Johnson, seeks to recover money damages from Burlington Northern, Inc. ("Burlington"), Safeway Store, Inc. ("Safeway"), and ACF Industries, Inc. ("ACF"). Plaintiff's damages stem from personal injuries suffered on March 31, 1977, in an industrial accident at the Wedron Silica Company ("Silica") in Wedron, Illinois. Plaintiff's amended complaint contained nine counts. Count I, a negligence claim against Burlington, concerned a bent sill step on railroad car ACFX 61300. Counts V and VIII, against Burlington, were based on respective theories of strict liability, and *res ipsa loquitur*. As to Safeway, counts III, VI, and IX alleged causes of action based on negligence, strict liability, and *res ipsa*. Counts IV, VII, and X, against ACF, were identical to those theories of recovery pleaded against Safeway. The La Salle County Circuit Court dismissed count VI, since it concluded it did not state a cause of action. Summary judgment for the other defendants was entered on the balance of the amended complaint. Mr. Johnson unsuccessfully tried to set aside these orders. Now, he appeals. The facts follow.

Silica manufactures sand and silica. To deliver a portion of its products it uses railroad carriers. Railroad cars and their contents are weighed on Silica's scale which is built into the tracks located at its Wedron manufacturing site. These cars are delivered to Silica's facility empty, then loaded. Once delivered to Silica, the cars are moved within the Wedron complex in a number of ways. Burlington stationed a yard engine(s) on location, which one of its employees operated at Silica's direction. At times, the cars might be moved by "* * * car pulls * * *," which utilized cables and hooks, and a winching device to pull the cars on the tracks from point to point. On other occasions jacking devices or a tractor with a front-end loader were employed to push the cars. Once weighed on the scale track, a Silica employee would release the railroad car's braking mechanism, permitting the car to roll down an incline. The car would be spotted farther down the track line. As part of their normal

duties, a scale track laborer would ride the free-rolling car and apply the vehicle's brake to stop the car at the desired location. This procedure prevented the free-wheeling car from crashing into a car previously spotted on the track line.

On March 31, 1977, Mr. Johnson was working as a scale track laborer for Silica. A certain railroad car, ACFX 61300, was sitting on the track scale having just been weighed. The car had been loaded with sand prior to March 31. Richard Sorenson released the car's brake so it could roll down the incline off the track scale. The car was moving slowly. As it did, plaintiff attempted to climb aboard. All hopper-type railroad cars like ACFX 61300 have a metal step on their corners to facilitate a workman's ascent. In some unexplained method, plaintiff was unable to negotiate the step. As a result, his foot was crushed under the car's wheel. Eventually, it was amputated above the ankle. Photographs of ACFX 61300, taken after the accident, show the sill step upon which Mr. Johnson sought to climb was bent and misshapen.

The pretrial discovery in this cause is voluminous and telling. ACF owned ACFX 61300. Safeway leased it from ACF to haul sand from Wedron to one of its out-of-state plants. Burlington was the carrier. From May 1975 to May 1976, ACFX 61300 was in ACF's Missouri repair shop. Its sill step guards were repaired. Its sill steps were not. The car was inspected when it left the shop and reinspected on May 24, 1976, before being put back into Burlington's interchange. The sill steps were not bent or otherwise misshapen. Later, Safeway leased the car. On March 22, 1977, the car was in Burlington's Galesburg yard. It was inspected by Albert Townsley and D. H. Josephson. These men were railroad car inspectors and Burlington employees. Both said their inspection of ACFX 61300 revealed the car was not in need of repair and its sill steps were not bent at that time. During their discovery depositions both men were shown photographs of ACFX 61300 and the condition of the sill step immediately after plaintiff's accident. They noted the step's irregularity and stated if their individual inspections had revealed such a condition, the car would have been removed from the Burlington's interchange and repairs ordered. Both inspectors said the car's step could have been bent by the use of cables and hooks to pull the car, or a forklift type apparatus to push it. Finally, Floyd Webster, a retired Burlington employee, stated in his deposition that prior to his retirement in March 1979, he had witnessed Silica employees on various occasions pulling railroad cars with cable hooks attached to a car's sill steps. Burlington delivered ACFX 61300 to Wedron prior to March 31, 1977, the date of the accident. The car was at the Silica site on the day previous to the accident and possibly two days earlier.

The issues in this cause are whether the trial judge erred when he

dismissed count VI of plaintiff's amended complaint and granted summary judgment on the remaining counts of the amended complaint. We affirm.

In sum, count VI says Safeway, being in the business of leasing railroad cars, leased ACFX 61300, and thereafter placed such car into the marketplace with a defective sill step or ladder rung. Allegedly, this condition was the proximate cause of plaintiff's injuries. Safeway moved to strike and dismiss count VI, contending as a lessee, it was not liable strictly in tort. The trial court agreed in an order dated October 24, 1980. On January 24, 1981, that dismissal order was certified for immediate appeal. (73 Ill. 2d R. 304(a).) Mr. Johnson filed his appeal on September 4, 1981.

■■ Although we question the timeliness of plaintiff's appeal, disagreement on the topic need not delay us. (Compare *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1013, with *Flynn v. Mahin* (1971), 1 Ill. App. 3d 51, 55-56.) Safeway was a lessee of ACFX 61300. It was a user of that car and other cars for business purposes, and was not in the business of manufacturing, selling, or distributing such cars in the marketplace. Safeway was not engaged in the manufacture or marketing of a product to benefit those individuals to whom the injury from the product's defective condition might reasonably be foreseen. (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 145-56.) Safeway cannot be strictly liable in tort for plaintiff's injuries. Count VI was correctly dismissed.

Next, we address the strict liability counts lodged against Burlington and ACF. Each count said the sill step was defective at the time ACFX 61300 left each defendant's control or before the car was transported to Silica on Safeway's behalf.

■■ In order to prevail on these two strict liability counts, Mr. Johnson had to establish his injury resulted from a condition of the sill step, such condition was unreasonably dangerous, and that condition existed on the product at the time it left a defendant's control. (Restatement (Second) of Torts sec. 402A (1965), cited in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621.) In order to support his allegations, plaintiff had to produce sufficient underlying factual details to support each separate element of his cause of action. Direct or circumstantial evidence might suffice. Mr. Johnson relied on the latter, exclusively. Plaintiff provided no expert testimony by deposition or otherwise that the sill step was defective. His circumstantial proof, namely, the existence of the bent step after the accident occurred, did not make out a *prima facie* case as to why the sill step was bent or misshapen. Such evidence must justify the probability of those events which generate each element of plaintiff's cause of action. It did not. The record in its present state admits that it was more probable that ACFX 61300 was moved by Silica employees either by car-pulls or

the front-end loader. Either of these methods of transportation would have caused the sill step on ACFX 61300 to become bent or crooked. Plaintiff's theory as to what occurred is guesswork: it is unsupported by fact, nor does it contravene defendant's theory thereby creating a material issue of fact for a jury to consider and weigh. *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 931-33.

■■ This does not mean plaintiff must prove his case at the summary judgment stage. He must present facts to support the various elements of his claim. The discovery filed in this case manifests plaintiff's failure in this regard. The crux of the strict liability counts against ACF and Burlington was the existence of a defect in the sill step when it left their control. But the record does not contain evidence the sill step was defective. Because it was bent does not make it so. A fact is not established from circumstantial evidence unless the circumstances or events are so related to each other so as to make the conclusion the only probable, not possible, one which can be drawn from them. (See *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 510.) Plaintiff did not produce any facts whereby it was shown the step's condition constituted a defect.

Also, the record lacks any details showing that the bent step was defective when it left the control of any of the defendants. Again, plaintiff asks us to infer that it must have been since it was bent immediately after the accident. Such is not an inference in any sense of the word. It is a hunch. The depositions of Young, Townsley, and Webster indicate that ACFX 61300 had been inspected as late as March 22, 1977, nine days before the accident, and no defects were found in the sill steps or any other part of the car. Mr. Webster stated that he had frequently seen Silica employees pull railroad cars with cable hooks and winches, or push the cars with a tractor, at the Silica facility. The record is barren of any facts which establish that Burlington or ACF damaged, knew of, or are chargeable with, knowledge of any damage to ACFX 61300 prior to the accident. Thus, plaintiff could not prevail on either strict liability count against Burlington or ACF.

■■■ The same is true pertaining to the three *res ipsa* counts against the defendants. *Res ipsa loquitur* is comprised of three elements: (1) the event must be one which ordinarily does not occur in the absence of someone's negligence; (2) the event must result from an agency or instrumentality within the exclusive control of the defendant; and (3) plaintiff must be free from contributory negligence. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 5.) It is plaintiff's burden to adduce adequate facts to obtain the inference of negligence *res ipsa* affords.

Plaintiff presented insufficient details to show that Burlington, ACF, or Safeway had exclusive control over ACFX 61300. The fact the sill step was bent on the day of the accident does not mean the step's condition is

attributable to any of the defendants. Nor does it provide them with notice of that condition. The facts of record make this plain. On March 22, 1977, the car was found to be without defects by Burlington employees. Subsequently, Burlington transported the car to Wedron on its line. The car sat in Silica's facility the day before the accident and possibly for two additional days prior thereto. When Burlington moved ACFX 61300, it did so with its locomotive engines. The only facts indicating how the sill step was bent points to the method of transportation sometimes employed by Silica employees: namely, pulling the cars by the sill steps with cable hooks or pushing them with a front-end loader. Plaintiff elicited no data during discovery showing how, when, or where the steps were damaged. As to ACF, the unrebutted facts are the car left its control in good repair. Finally, plaintiff showed no facts indicating Safeway had knowledge or should be chargeable with knowledge of the steps' condition.

● 6 The intervening control of Silica destroys the inference of negligence which *res ipsa* permits. We cannot agree with plaintiff that *Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 132-33, *aff'd* (1970), 46 Ill. 2d 288, requires a different result. Our reasons are twofold.

In *Moore*, plaintiff sued a manufacturer for injuries suffered when a can of Drano exploded after the product was out of the producer's control in excess of 10 months. The can had not been opened or altered in any way since being shipped by the producer. Accordingly, it was held the manufacturer had exclusive control over the product when the can exploded. In other words, no facts existed to associate liability with another person in the manufacture and marketing of the product.

The facts of record in this cause are otherwise. First, Silica had the opportunity as well as several instrumentalities to cause the sill step to become bent. Silica employees had engaged on prior occasions in moving railroad cars in such a manner so as to cause the purportedly defective condition of the sill step. Plaintiff's facts do not in any way eliminate these outward causes of the event which allegedly caused plaintiff's injuries. Furthermore, plaintiff stated in his deposition that prior to ascending ACFX 61300, he did not look at the sill step and he did not know what caused him to fall. He said the step was secure and he saw no grease or oil on it. The inference of negligence is not based on the possibility that an event caused the harm if the facts indicate otherwise. Probability, not speculation, is the standard (*Spidle v. Steward*) if the inference is to be permitted. We affirm the summary judgments on these counts.

On the three separate negligence counts, the trial judge concluded plaintiff failed to present facts to support the elements of such claims. We agree.

■■ For a defendant to be liable for negligence, he must have a duty towards plaintiff, he must breach that duty, and the breach must have

been the proximate cause of the injury thereby damaging plaintiff. (*Hayes v. Bailey* (1980), 80 Ill. App. 3d 1027, 1030.) Plaintiff has the burden of proof on each and every element.

Plaintiff elicited no facts that Safeway or ACF caused the condition of the sill step, were aware of such, or should have been aware of such condition prior to the accident. After three years of discovery, plaintiff could not plead facts that Safeway knew of the step's condition. As to ACF, plaintiff could only submit that repairs had been made to the sill step guards in 1975-1976. Plaintiff did not plead any facts to show ACF made repairs to ACFX 61300's sill steps or knew or should have known such steps were bent prior to the accident. Because the sill step was bent immediately after the accident is not a sufficient reason to charge Safeway or ACF with notice of the steps' condition. The existence of a fact cannot be reasonably inferred from the evidence when the existence of another fact, which is inconsistent with the first, can be inferred with equal certainty from identical proof. Thus, we see no facts indicating ACF or Safeway breached a duty owed to plaintiff. The record does not say ACF or Safeway knew or should have known of the step's condition, nor does it allow us to draw an inference they did. The record does not say ACF or Safeway caused the bent sill step, nor does it allow us to draw an inference they did. Thus, no genuine issue of material fact existed to be litigated.

The same is true as to the negligence claim against Burlington. No facts exist that Burlington caused the sill step condition, delivered ACFX 61300 to Silica in that condition, or was aware of, or had a previous awareness of that condition in ACFX 61300. Plaintiff has the burden of eliciting sufficient facts, circumstantial or otherwise, wherein extrinsic causes of the accident were excluded. This does not mean plaintiff had to refute all other possible causes of the accident. It does mean that a quantum of details had to exist which would give rise to a reasonable inference that what plaintiff claims as fact was true. Although plaintiff had a substantial opportunity to present facts to sustain his negligence action, he failed to do so. (See *Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 77-78.) If less were required, liability would be based on nothing more than guesswork. Such is impermissible.

Plaintiff's amended complaint does not specifically set out a cause of action against Burlington Northern under the Federal Safety Appliance Act. Under that statute, it is unlawful:

"* * * for any common carrier * * * to haul or permit to be hauled or used on its line any car * * * not equipped with appliances provided for * * * to wit; All cars must be equipped with secure sill steps and efficient handbrakes * * *." (45 U.S.C.A. sec. 11 (1976).)

Instead, plaintiff relied solely on theories of negligence, strict liability, in tort, and *res ipsa*. The Federal statute was only pleaded as one of several instances of Burlington's negligence (*i.e.*, violation of a statute: see *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390). Therefore, the trial judge was not given an opportunity to rule on whether plaintiff pleaded a cause of action under the Federal statute.

Notwithstanding, on appeal plaintiff asserts he has a cause of action under Federal law which imposes absolute liability on Burlington for noncompliance with the Federal statute. Plaintiff cites various Federal cases (*e.g.*, *Monongahela Ry. Co. v. Black* (4th Cir. 1956), 235 F.2d 406; *Hunter v. Missouri-Kansas-Texas R.R. Co.* (N.D., Okla. 1967), 276 F. Supp. 936), where a cause of action has been acknowledged based on a liberal construction of the statute as well as the notice pleading rules of the Federal courts. Since we are confronted with a legal issue, namely, the sufficiency of a complaint, plaintiff says, we should reverse the summary judgment for Burlington, and allow plaintiff to amend his pleadings so he can plead a cause of action directly under the Federal statute. We cannot do this.

■▮■ It is well settled that parties to an appeal must adhere to the theory which they presented to the trial court. In other words, the theory upon which the case was submitted to the trial court should be treated as the law of the case on appeal. (*Blanchard v. Lewis* (1953), 414 Ill. 515, 521.) The theories upon which plaintiff sought recovery against Burlington did not include a cause of action under the Federal statute. *Res ipsa*, strict liability in tort, and negligence were the only causes of action outlined in plaintiff's amended pleadings. Nor did plaintiff, at any time in the trial court, argue the Federal statute as an independent basis of recovery. On several occasions in the trial court, Mr. Johnson availed himself of the opportunity to amend his pleadings. Not once did he do so to allege a cause of action under the Federal statute. Because the theory was not presented to the trial court, it was waived for the purposes of this appeal. *In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 548-49.

For the reasons stated, the judgments of the La Salle County Circuit Court are hereby affirmed.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.