BOOKER DANIELS, JR., Plaintiff-Appellee, v. STANDARD OIL REALTY CORPORATION *et al.*, Defendants-Appellants.

First District (1st Division)   No. 84—2090

Opinion filed June 9, 1986.—Rehearing denied July 16, 1986.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, Charles P. Menges, and Sara E. Cook, of counsel), for appellants.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Leslie J. Rosen, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Booker Daniels, Jr., brought a two-count action against defendants, Otis Elevator Company (Otis) and Standard Oil Realty Corporation (Standard Realty) for personal injuries sustained in an elevator accident. The elevator was manufactured, installed and maintained by Otis and owned by Standard Realty. Count I of plaintiff's complaint alleged specific negligence and count II was based on *res ipsa loquitur*. At trial, following the close of evidence, the court granted a directed verdict in favor of defendant Standard Realty on the negligence count only. The jury returned a verdict of $770,000.15

for plaintiff with a 10% reduction for plaintiff's comparative negligence, resulting in a final award of $693,000.14. Defendants appeal, contending that (1) the plaintiff failed to establish a *prima facie* negligence case against defendants; (2) evidentiary errors merit a new trial; (3) the jury award was excessive; and (4) the jury verdict was against the manifest weight of the evidence.

At trial, plaintiff testified that on the morning of March 22, 1977, he was en route to his employment as an accounting clerk for the Standard Oil Company. As he was exiting an elevator on the 35th floor of the Standard Oil Building in Chicago, the elevator bounced, dropping 10 or 12 inches below floor level. As the elevator returned to floor level, plaintiff's foot became trapped and compressed in the space between the elevator floor and the 35th floor. As plaintiff freed himself from the elevator, he twisted his foot and fell onto the hallway floor. Following the accident, plaintiff went to his company's physician, Dr. Kalacic. Dr. Kalacic examined plaintiff's foot and ankle and had X rays taken. Following the examination, plaintiff went home for the day. During the next several days, the swelling and pain of plaintiff's foot increased. His toes began to spread, his foot was losing color and it was beginning to turn inward. Dr. Kalacic referred plaintiff to a second physician, Dr. Milgram. Dr. Milgram diagnosed plaintiff's injury as Sudeck's Atrophy, a condition similar to a nerve paralysis, and removed a ganglion from plaintiff's ankle. Following this procedure, plaintiff's foot became infected and he sought treatment from an orthopedic surgeon, Dr. Donald Miller.

Dr. Miller testified that he hospitalized plaintiff and operated on the foot to attempt to reduce spasms. He then placed the foot in a cast for four weeks. After he removed the cast, he prescribed a brace for plaintiff to help turn the foot outward. Dr. Miller also prescribed a program of physical therapy at the hospital and at home. Plaintiff made little progress at therapy because of the resulting pain he experienced. Dr. Miller stated that plaintiff would probably have to wear the brace permanently and expressed doubt as to whether plaintiff could return to work as an accountant.

Dr. Carlos Scuderi, another orthopedic surgeon, testified that he also treated plaintiff. He hospitalized plaintiff to perform a tendon transplant on the injured foot. While the plaintiff was under anesthesia, Dr. Scuderi found that the inverted foot moved into a normal position. Thereafter, Dr. Scuderi diagnosed plaintiff's problem as psychological and cancelled the surgery. He advised the plaintiff to undergo psychotherapy treatments. He believed that plaintiff's pain was very real to him and that it resulted from the injury he sustained in the

elevator accident. It was his opinion that plaintiff's foot was permanently impaired.

Dr. Harold Spies, the associate medical director of plaintiff's employer, Standard Oil Company, testified as to plaintiff's ability to return to work. Dr. Max Goldschmidt had examined plaintiff pursuant to Dr. Spies' request. Following this examination, Dr. Goldschmidt submitted a report to Dr. Spies wherein he diagnosed plaintiff's condition as inversion deformity of the left ankle and foot secondary to trauma. This condition would require the plaintiff to utilize a brace and two crutches. On the basis of this report. Dr. Spies determined that plaintiff was disabled and could not perform his job.

Charles Kowalewicz, an elevator maintenance mechanic, testified as an expert witness for plaintiff. In his opinion, the elevator fell below floor level because of a power surge caused by a dirty gear. The problem could have been prevented by oiling or lubricating the elevator brake on a monthly basis. Kowalewicz further testified that the elevator was improperly installed in that the clearance between the elevator sill and the floor sill was greater than the building code required. On cross-examination, Kowalewicz stated that the failure of the elevator brake to function properly could have been caused by airborne dirt and that it is not possible to prevent airborne dirt by maintenance.

James Hayes, a maintenance mechanic for Otis, testified that he performed preventative maintenance work on the elevators in the Standard Oil building. Written maintenance charts were maintained for each of the 43 elevators in the building pursuant to a contract between Otis and Standard Realty. Each elevator had its own maintenance schedule which delineated weekly, monthly, semiannual and annual maintenance tasks. The brake which holds the elevator in place is inspected and lubricated once a year. The chart for 1977, the year of this accident, was no longer in existence since they were routinely destroyed after a period of time.

## I

Defendants initially contend that the trial court erred in denying their motion for a directed verdict and motion for judgment notwithstanding the verdict because the plaintiff failed to prove a *prima facie* negligence case. At the close of the evidence, the court directed a verdict in favor of Standard Realty on the specific negligence count since plaintiff could not prove Standard Realty had notice of a defect in the elevator. Subsequently, the case was submitted to the jury on theories of both specific negligence and *res ipsa loquitur* against Otis and only

on *res ispa loquitur* against Standard Realty. Defendant Otis maintains that the evidence in the record failed to support a finding of specific negligence showing that it was negligent in the maintenance, repair, operation, or installation of the elevator in which plaintiff was injured.

■ Verdicts ought to be directed and judgments notwithstanding the verdict entered only in those cases in which all of the evidence, when viewed in an aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Proof of negligence requires that the plaintiff establish that the defendants' conduct breached a duty to plaintiff and proximately caused his injuries. (*Smith v. General Paving Co.* (1978), 58 Ill. App. 3d 336, 374 N.E.2d 1134.) By contract and at common law, Otis' undertaking was to maintain the elevators in a proper and safe operating condition. Whether Otis exercised such care was a factual question that was preeminently within the province of the jury to determine. *Jardin v. Rubloff* (1978), 73 Ill. 2d 31, 382 N.E.2d 232.

■ In the case at bar, plaintiff's expert, Kowalewicz, testified that in his opinion the accident was caused by the failure of the brake to set properly. He stated that this condition could have been prevented by oiling or lubricating the brake on a monthly basis. Otis' own expert, Hayes, testified that the elevator brake was greased only once a year. Kowalewicz also testified that the elevator was improperly installed in that the clearance between the car and the floor was in excess of the clearance allowed by the applicable building code. While Kowalewicz did state that a power surge due to airborne dust might have been the cause of the accident, he repeatedly expressed his opinion that the cause of the accident was from the failure of the brake to set properly. Our review of this evidence, in its aspect most favorable to plaintiff, does not permit us to conclude that it so overwhelmingly favors Otis that no contrary verdict could stand.

■ ■ Defendants further argue that plaintiff produced insufficient evidence against both defendants to establish the requisite elements of *res ipsa loquitur*. To establish the requisite elements of *res ipsa loquitur*, a plaintiff must show that he was injured:

> "(1) in an occurrence that would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant *** and (3) under circumstances indicating the injury was not due to any voluntary act or neglect on the part of the one claiming the doc-

trine." *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 272, 443 N.E.2d 569, 572.

Defendants contend that plaintiff in this case failed to prove the first and third elements. In establishing the first element, that the accident would not have occurred in the absence of negligence, we believe the evidence presented at trial reasonably permitted the jury to conclude that defendants' negligence probably accounted for plaintiff's injuries. In the normal course of events, an elevator does not operate as the elevator here did, and when it does, negligence is a more likely cause than other causes. See *Cobb v. Marshall Field & Co.* (1959), 22 Ill. App. 2d 143, 159 N.E.2d 520.

■ We next consider the third requisite element for *res ipsa loquitur*, that the injury is not due to any voluntary act or negligence on the part of the plaintiff. Defendants correctly assert that this element has been interpreted to require that plaintiff must show freedom from contributory negligence. (*Johnson v. Burlington Northern, Inc.* (1982), 107 Ill. App. 3d 130, 437 N.E.2d 334.) The jury here was instructed in comparative fault principles as presently adopted and applied in this State (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886), and found the plaintiff 10% negligent. Defendant argues that this finding of comparative negligence on the part of plaintiff bars his *res ipsa loquitur* claim.

In *Alvis*, our supreme court adopted comparative negligence and held that it is no longer necessary for a plaintiff to show freedom from contributory negligence in pleading or proving a negligence case. (See *Casey v. Baseden* (1986), 111 Ill. 2d 341.) Prior to *Alvis*, a plaintiff was required to prove his own exercise of due care as an essential element of his negligence action. (*Carter v. Winter* (1965), 32 Ill. 2d 275, 204 N.E.2d 755.) To retain the requirement that a plaintiff be free from contributory negligence as an element of the *res ipsa loquitur* doctrine, we would effectively erect a bar to recovery where a plaintiff must rely on *res ipsa loquitur* to establish a *prima facie* negligence case. Accordingly, we conclude that since the jury could reasonably have found that defendants' conduct was a substantial factor in causing plaintiff's injury and that the occurrence is of a kind which ordinarily would not occur in the absence of defendants' negligence, the doctrine of *res ipsa loquitur* applies even though plaintiff's negligence also contributed to his injury. Any other result would contravene the concept of comparative negligence and the current State of Illinois tort law. Accord, *Dyback v. Weber* (1985), 134 Ill. App. 3d 426, 480 N.E.2d 845; *Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 442 N.E.2d 1356.

## II

Defendant next takes issue with certain evidentiary rulings made by the trial court. The first of these involves the admission of photographs of the elevator sill and floor sill and the related testimony. The admission of photographs is within the sound discretion of the trial court. (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 430 N.E.2d 14.) We find no abuse of discretion here in admitting the photographs. Plaintiff's expert testified that the elevator was improperly installed because the clearance between the elevator car and the floor was in violation of the applicable safety code. The photographs illustrated the subject matter of this testimony which directly related to defendants' liability. See *Lake County Forest Preserve District v. Vernon Hills Development Corp.* (1980), 85 Ill. App. 3d 241, 406 N.E.2d 611.

We also reject defendants' contention that the trial court erred in refusing to instruct the jury on plaintiff's failure to obtain proper medical care. Defendants argue that such an instruction was required since plaintiff refused to undergo physical therapy. Our review of the record indicates that such an instruction was not warranted. Plaintiff testified that he did not refuse to undergo physical therapy but discontinued treatments after a period of time because of resulting pain. See *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.

The defendants also contend that plaintiff's reference to the corporate nature of the defendants in closing argument was prejudicial. We note that defense counsel failed to make a timely objection at trial and first objected to this comment in their post-trial motion. Defendants contend that they failed to object at trial for fear of drawing attention to the argument. It is well settled that a party cannot sit on his hands and let perceived errors into the record and complain of the errors for the first time in a post-trial motion. (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051.) We consider this argument waived since defendant failed to make contemporaneous objections to the complained of comment at trial. *Terracina v. Castelli* (1979), 80 Ill. App. 3d 475, 400 N.E.2d 27.

## III

Defendants next maintain that the jury's award was excessive and lacked evidentiary support. Specifically, defendants argue that the award of $565,118 for past and future wages, out of a total damage award of $693,000, was improper, since it was based on the assumption that the plaintiff was totally and permanently disabled. From our

review of the record, we conclude this award was within the range of reasonable limits. An economics expert testified at trial that plaintiff's maximum past and future lost wages would be $537,096. Further, the testimony of Dr. Spies, a medical director for plaintiff's employer, was that he had placed plaintiff on retirement status due to his permanent and total disability resulting from this accident. Although the award might be considered high in light of this evidence, we do not view it as unreasonable.

## IV

■■ Plaintiff's final argument is that the trial court erred in denying defendants' motion for a new trial because the jury's verdict was against the manifest weight of the evidence. In their post-trial motion, defendants argue that plaintiff did not establish a *prima facie* negligence case, the lost wages awarded were not justified since plaintiff did not demonstrate that he was totally and permanently disabled from working and plaintiff failed to minimize his medical damages by pursuing a course of physical therapy.

It is well established that whether a motion for a new trial is to be granted is within the sound discretion of the trial court and should not be disturbed unless a clear abuse of discretion appears in the record. (*Crup v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 398 N.E.2d 188; *Brown v. Johnson* (1978), 60 Ill. App. 3d 76, 378 N.E.2d 757.) An abuse of discretion will be found where there is no recognizable basis in the record to support the granting of a motion for a new trial. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267.) We have previously addressed those issues raised in the post-trial motion and found them to be without merit. Accordingly, defendants have failed to demonstrate any abuse by the trial court in denying its motion for a new trial.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.