(No. 95854.—

LISA M. SHANNON *et al.*, Appellees, v. BOISE CASCADE CORPORATION, Appellant.

*Opinion filed February 5, 2004.*

THOMAS, J., joined by GARMAN, J., specially concurring.

John E. Thies and Lara L. Quivey, of Webber & Thies, P.C., of Urbana, Steve Y. Koh, of Perkins Coie, L.L.P., of Seattle, Washington, and William R. VanHole, of Boise, Idaho, for appellant.

Joseph W. Phebus, Gary D. Forrester and Terry E. Schroeder, of Phebus & Koester, of Urbana, for appellees.

Jeffrey Lennard and Jennifer A. Barrett, of Sonnenschein, Nath & Rosenthal, L.L.P., of Chicago, for *amicus curiae* National Association of Independent Insurers.

Hugh C. Griffin, of Lord, Bissell & Brook, of Chicago,

and Stephen J. Harburg, John H. Beisner and Charles E. Borden, of O'Melveny & Myers, L.L.P., of Washington, D.C. (Hugh F. Young, Jr., of Reston, Virginia, of counsel), for *amicus curiae* Product Liability Advisory Council, Inc.

Barnow & Associates, P.C., and William J. Harte, Ltd., all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE KILBRIDE delivered the opinion of the court:

For the second time, we are asked to review the decision of the appellate court in this case, involving several homeowners' consumer fraud claims against Boise Cascade, a manufacturer of composite wood siding. The trial court entered summary judgment in favor of Boise Cascade, the appellate court reversed, and we vacated the appellate court's judgment, directing the court to reconsider its judgment in light of *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 (2002). See *Shannon v. Boise Cascade*, 328 Ill. App. 3d 621 (2002), *vacated*, 201 Ill. 2d 615 (2002). Following *vacatur*, the appellate court attempted to distinguish *Oliveira* and reissued its previous opinion in full. 336 Ill. App. 3d 533.

We allowed Boise Cascade's petition for leave to appeal. 177 Ill. 2d R. 315. We further granted leave to the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiffs and also granted leave to the National Association of Independent Insurers and the Product Liability Advisory Council to file *amicus curiae* briefs in support of defendant. 155 Ill. 2d R. 318. We now reverse the judgment of the appellate court.

## BACKGROUND

Plaintiffs, Lisa M. Shannon, Timothy J. Shannon, Brian K. Connelly, Susan West, Shapour Arami, Bruce

Fischer, and James Torongo, own homes covered with a Boise Cascade exterior composite wood siding product. The siding was installed on the homes when they were built between 1983 and 1984. While five of the plaintiffs are subsequent purchasers, Fischer and Torongo are the original owners of their homes. Boise Cascade began manufacturing its composite siding about 1960 but has not manufactured, sold, or marketed the siding since 1984.

Plaintiffs filed a putative class action suit, asserting, *inter alia*, a claim under the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 1998)), alleging that Boise Cascade's composite siding was defective in that it was subject to rotting, buckling, warping, wick moisture, and general failure. Plaintiffs' complaint further alleged that Boise Cascade deceptively advertised the composite siding, falsely representing that the siding was "of inherent good quality," "durable," "low maintenance," and "looked and performed comparably to natural wood siding." The complaint also avers that Boise Cascade fraudulently and deceptively failed to disclose that its siding "performed poorly in the field," with a "high rate of failure," was sensitive to moisture, and required "highly particularized maintenance."

Admissions in all of the plaintiffs' depositions established that none had received any representations regarding the siding from Boise Cascade. An illustrative example is plaintiff Connelly, who testified that he purchased his 13-year-old home in 1997. At the time of the purchase, he did not know who manufactured the siding and he was not aware of any advertising, literature, or other representations about the siding. Lisa and Thomas Shannon, West, and Arami did not know the siding was a Boise Cascade product. Before purchasing their homes, they were aware that siding damage was present.

Fischer and Torongo, the two plaintiffs who purchased new homes, reviewed brochures prepared by the builder containing representations about the siding. Those representations were from the builder and were not consistent with Boise Cascade's product literature. The complaint did not allege that any named builder, architect, or engineer had received Boise Cascade product literature, or that any plaintiff, in making a decision to purchase a home, communicated in any way with any builder, architect, or engineer who had received Boise Cascade product literature. No evidence was proffered at the summary judgment hearing relating to the distribution of product literature to anyone. Moreover, prior to the summary judgment hearing plaintiffs did not request leave to amend their complaint to allege that they relied on builders, architects, or engineers who had been deceived by Boise Cascade's product literature.

The circuit court granted Boise Cascade summary judgment, stating that "seven of the eight plaintiffs neither saw, heard, or otherwise were aware of the defendant's advertising," and finding that the claimed damages were not proximately caused by the alleged deceptive advertising. The circuit court refused to enter summary judgment against an eighth plaintiff, Jack B. Babel, who bought his home new in 1984, knew the siding was manufactured by Boise Cascade, and had read some of Boise Cascade's publications prior to making his purchase. Babel's claim is not at issue in this appeal.

Following a Supreme Court Rule 304(a) finding by the circuit court that there was no just reason to delay enforcement or appeal (155 Ill. 2d R. 304(a)), plaintiffs appealed, arguing that the circuit court improperly analyzed the elements of a cause of action under the Act, in particular the concepts of "materiality" and "proximate causation." The appellate court reversed, holding that the circuit court construed the Act too narrowly by

requiring privity, "some sort of direct contact between the plaintiffs and the representations made by Boise Cascade." *Boise Cascade*, 328 Ill. App. 3d at 625. According to the appellate court, the Act created a new cause of action, affording consumers broad protection by prohibiting any deception or false promise. *Boise Cascade*, 328 Ill. App. 3d at 625-26. The appellate court further held that the circuit court erred in its conclusion that there was no proximate causation. *Boise Cascade*, 328 Ill. App. 3d at 628. According to the appellate court, "[w]here reasonable minds could differ whether the defendant's conduct was a substantial factor in bringing about the injury, the matter is for the jury to decide." *Boise Cascade*, 328 Ill. App. 3d at 628.

Justice Turner dissented. He believed that the majority failed to address the actual proximate cause theory advanced by plaintiffs in this case. *Boise Cascade*, 328 Ill. App. 3d at 631 (Turner, J., dissenting). The plaintiffs' theory, as alleged in the complaint, posited that "in [the absence of the] promotion and marketing activities [of Boise Cascade] a market would not have been developed for composite wood siding and thus the siding would not have been sold in the State of Illinois and therefore it would not have been installed on the residences of plaintiffs and the other members of the class."

Boise Cascade sought leave to appeal to this court (177 Ill. 2d R. 315) and, while the petition was pending, we filed our opinion in *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 (2002). *Oliveira* involved a putative class action against a gasoline company under the Act, where plaintiff alleged that Amoco engaged in a deceptive advertising campaign for its premium gasolines, resulting in consumer fraud. In *Oliveira*, this court rejected the plaintiff's "market theory" of proximate causation that was almost identical to the theory pleaded by plaintiffs here. *Oliveira*, 201 Ill. 2d at 149-55. We then

vacated the appellate court judgment and directed that court to reconsider its judgment in the light of *Oliveira. Shannon v. Boise Cascade*, 201 Ill. 2d 615 (2002) (supervisory order).

Plaintiffs then sought leave from the appellate court to amend their complaint (155 Ill. 2d Rs. 362, 366) to allege that certain unspecified "architects, code promulgating bodies, materials suppliers, builders and homeowners" relied on Boise Cascade's representations. The proposed amendment did not allege, however, that any of the builders, material suppliers, architects, or other third parties actually involved in the plaintiffs' homes were aware of the alleged misrepresentations. It reiterated the "market theory" of proximate cause as set out in their original complaint. Leave to amend was denied.

The appellate court distinguished *Oliveira*, stating that the *Oliveira* plaintiff was solely concerned with price and did not complain that the product involved was defective. 336 Ill. App. 3d at 537. Further, according to the appellate court, "[i]t is sometimes possible to rely on misrepresentations without reading the documents in which such misrepresentations are made. *** Purchasers of homes employ builders, architects, and engineers to examine the product literature for them; and it is a mistake to say that home purchasers do not rely on that product literature." 336 Ill. App. 3d at 537.

Justice Turner again dissented, arguing that *Oliveira* controlled. 336 Ill. App. 3d at 546-47 (Turner, J., dissenting). In particular, he found "the majority's insouciance to our *** decision in *Oliveira* vexing." 336 Ill. App. 3d at 546 (Turner, J., dissenting). We granted Boise Cascade's petition for leave to appeal (177 Ill. 2d R. 315) and now reverse the judgment of the appellate court.

## ANALYSIS

Summary judgment is proper where the pleadings, depositions, and admissions on file, when viewed in the

light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). We review the grant of summary judgment *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001).

The complaint in *Oliveira* asserted that the defendant's allegedly deceptive advertising scheme increased demand for the defendant's premium gasolines, thereby creating an inflated and otherwise unsustainable price for those gasolines, causing damage to all purchasers who bought the gasolines while the advertisements were running, because they paid a higher price than they would have in the absence of the ads. *Oliveira*, 201 Ill. 2d at 140-41. We affirmed the dismissal of plaintiff's claim under the Act because the complaint failed to allege that the representative plaintiff was in any manner deceived by defendant's advertisements. *Oliveira*, 201 Ill. 2d at 154-55. We reasoned that this result was compelled by our holding in *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998).

In *Zekman*, plaintiff's complaint alleged that the defendant telephone company violated the Act by reviewing, revising, and approving Direct American's deceptive solicitations and recorded messages regarding a prize scheme and, further, that it violated the Act by billing for plaintiff's calls to the 900 number referenced in the solicitations in a deceptive manner. We affirmed summary judgment in favor of the defendant telephone company. Acknowledging our holding in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996), requiring pleading and proof of proximate cause, we held that no genuine issue of material fact existed as to whether alleged deceptive advertising proximately caused his damage because plaintiff's deposition testimony demonstrated that he was not deceived by defendant's actions. We reasoned that

since plaintiff admitted that he did not read or pay the bills himself, he could not have been misled by their allegedly deceptive nature. *Zekman*, 182 Ill. 2d at 375-76.

The teaching of *Oliveira* and *Zekman* is that deceptive advertising cannot be the proximate cause of damages under the Act unless it *actually deceives the plaintiff.* Plaintiffs' complaint in this case does not allege that any deceptive advertising by Boise Cascade was received by any plaintiff, or that it was received by any builder, architect, engineer, or other like person somehow connected with a plaintiff. Instead, plaintiffs claim that Boise Cascade's alleged deceptions created a market for their product that would not otherwise exist, thus resulting in its use on their homes and the plaintiffs' ultimate damages. The only distinction between this claim and the market theory claim in *Oliveira* is the nature of the damages. The plaintiffs here seek recovery for the cost of replacement or repair of the siding, while the *Oliveira* plaintiff sought recovery for the inflated price paid for premium gasoline. The appellate court deemed this significant (336 Ill. App. 3d at 537), but we perceive it to be a distinction without a difference. The advertising in *Oliveira* and in this case did not in any way deceive the plaintiffs, and thus could not have proximately caused the claimed damages, whatever their nature.

It is certainly possible that evidence might demonstrate that the siding would not have been installed on plaintiffs' homes but for Boise Cascade's promotional literature. It does not follow, however, that the literature distributed to unnamed persons 20 or more years ago, who may or may not have been deceived, induced plaintiffs to accept the siding. Without such a nexus, the alleged deception is simply too remote from the claimed damages to satisfy the element of proximate cause.

Although proof of actual deception of a plaintiff is required, this is not to say that the deception must

always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act. For instance, if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred "as a result of" the indirect deception, as required by section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2000)). In those circumstances, the purchaser, who may have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect or contractor, who reasonably should have had correct knowledge. Plaintiffs did not plead any facts to support that theory at any time.

A similar situation was addressed by the appellate court in *St. Joseph Hospital v. Corbetta Construction Co.,* 21 Ill. App. 3d 925 (1974). In that case, the defendant hospital asserted a common law fraud claim against the manufacturer-supplier of wall paneling based on that defendant's failure to disclose to the architect and the builder that testing had revealed the paneling to have a flame spread of 17 times the maximum allowed under the Chicago building code. The appellate court upheld a jury verdict in favor of the hospital. *St. Joseph,* 21 Ill. App. 3d at 957. The court noted that traditional privity was not a requirement in fraud actions and held that "[i]t is enough that the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage." *St. Joseph,* 21 Ill. App. 3d at 954.

The court cited with approval legal commentary from Harper and James, Law of Torts, and American Jurisprudence Second, asserting the principle that the false representations must have been intended to influence the complaining party is equally applicable whether they

are made to him directly or indirectly. *St. Joseph*, 21 Ill. App. 3d at 954-55, citing F. Harper & F. James, Torts § 7.2 (1956) and 37 Am. Jur. 2d *Fraud & Deceit* § 190 (1968). Thus, the misrepresentations to the architect and builder ultimately deceived the hospital. Here, contrary to the assumption of the appellate court (336 Ill. App. 3d at 541), the record in this case, however, does not support a finding of indirect deception.

The appellate court's analysis is dependent on an assumption that Boise Cascade's representations about the siding reached Fischer and Torongo, the plaintiffs who purchased their homes new, through the builder-seller. The court reasoned:

"The builder-seller of the homes was *probably* aware of the representations, but according to the circuit court that did not help plaintiffs because there was no evidence the builder-seller was an agent of Boise Cascade. That analysis is mistaken. Whether or not the builder-seller was Boise Cascade's agent, Boise Cascade's representations reached plaintiffs through the builder-seller, and plaintiffs Fischer and Torongo relied upon those representations, to their damage." (Emphasis added.) 336 Ill. App. 3d at 541.

A careful review of the record reveals no evidentiary basis for the appellate court's conclusion that the builder-seller "probably" was aware of Boise Cascade's representations. It is well settled that parties to an appeal must adhere to the theory presented to the trial court and that theory must be treated as the law of the case on appeal. See *Johnson v. Burlington Northern, Inc.*, 107 Ill. App. 3d 130, 138 (1982), citing *Blanchard v. Lewis*, 414 Ill. 515, 521 (1953). Fischer and Torongo both testified that the *builders* of their homes, not Boise Cascade, had created brochures containing certain statements about the siding. There was no evidence that Boise Cascade had made these statements, either to the builders or to anyone else. In fact, the statements in the builder's brochures contradicted the representations in Boise Cascade's product literature. Torongo stated that the

builder told him the siding was "maintenance free," while Boise Cascade's product literature emphasized the need for proper maintenance. Fischer also testified that the builder's brochure stated that the home contained premium hardboard siding with a 20-year factory finish. However, the brochure did not identify the manufacturer of the siding and, moreover, Boise Cascade's warranty on its siding finish was for 5 years, not 20. Thus, Boise Cascade's alleged misrepresentations did not, directly or indirectly, reach any plaintiff.

As we have noted, plaintiffs' complaint does not allege that the builders or others involved in the construction or marketing of their homes were deceived. The plaintiffs all admitted that they were not personally deceived by Boise Cascade's advertising. In the absence of any evidence that the builders or other like persons were actually deceived, it is entirely possible that they, like the plaintiff in *Oliveira*, "knew the truth" but elected to use Boise Cascade's product anyway. See *Oliveira*, 201 Ill. 2d at 155. In the case of four of the plaintiffs who were subsequent purchasers of their homes, deception was not a cause of their damages because they knew that siding damage had occurred and, therefore, that it was subject to deterioration. Hence, based on the pleadings, plaintiffs can rely only on an alleged deception of unspecified persons having no demonstrated connection to their homes or to themselves. This is nothing more than the market theory this court specifically rejected in *Oliveira*.

## CONCLUSION

Since there is no genuine issue of material fact as to whether the plaintiffs were damaged as a result of Boise Cascade's alleged deceptive advertising, the circuit court properly entered summary judgment for defendant on the consumer fraud count. The appellate court erred in reversing that judgment and we therefore reverse the

judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE THOMAS, specially concurring:

I agree with the majority's decision to reverse the appellate court, and I further agree with the majority's reasons for doing so. The majority correctly concludes that summary judgment for defendant was proper because "deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff." 208 Ill. 2d at 525. I write separately, however, because the majority has included confusing and misleading *dicta* at the end of the opinion. After determining the proper outcome under the facts of this case, the majority endeavors to adjudicate a hypothetical case with different facts. In resolving this hypothetical, the majority sets forth a rule of law that contradicts the one in the controlling portion of the opinion. Because I do not agree that we should completely undo the opinion that we just finished delivering, I cannot join the majority opinion in its entirety.

In the main portion of the opinion, the majority properly rejects plaintiffs' "market theory" of causation. The majority correctly describes this court's holdings in *Zekman* and *Oliveira* and their effect on the allegations in this case. Here, the plaintiffs' complaint failed to allege that they were actually deceived by the advertising. Thus, their case cannot survive summary judgment.

The majority opinion goes awry at the end when the majority explains what the result would have been if plaintiffs would have pled different facts:

"Although proof of actual deception of a plaintiff is required, this is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act. For

instance, if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred 'as a result of' the indirect deception, as required by section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2000)). In those circumstances, the purchaser, who may have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect or contractor, who reasonably should have had correct knowledge." 208 Ill. 2d at 525-26.

Of course, this whole passage and everything that comes after it is *dicta*, and we should not be issuing an advisory opinion on what the result might be in a different case. See *Oliveira*, 201 Ill. 2d at 157 (advisory opinions are to be avoided); *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 470 (1997) (generally, this court will not "engage in speculative analysis or *** render an advisory opinion *** where, as in the instant case, such analysis or opinion is not necessary for the disposition of the cause"). Putting that problem aside, however, the analysis in this paragraph is directly contrary to the rule we established in *Zekman*, *Oliveira*, and the non-*dicta* portions of the majority opinion. Indeed, this analysis actually revives the dissent in *Oliveira*, a position that was rejected less than two years ago.

In *Oliveira*, we rejected the plaintiff's attempt to rely on a "market theory" of causation under the Consumer Fraud and Deceptive Business Practices Act. A significant problem was that plaintiff had never seen the ads upon which he purported to base his claim:

"Indeed, plaintiff could not allege that defendant's advertisements deceived him or misled him as to what he was receiving when he made his purchase. *Because plaintiff does not allege that he saw, heard or read any of defendant's ads*, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance." (Emphasis added.) *Oliveira*, 201 Ill. 2d at 154-55.

We then reiterated that the problem with plaintiff's theory was that "purchasers of defendant's premium gasolines who never saw the ads and, thus, were 'not deceived' [would] also have valid claims." *Oliveira*, 201 Ill. 2d at 155. This was consistent with our decision in *Zekman*, in which we held that the plaintiff could not succeed on his claim that he was deceived by AT&T's manner of billing for "900" number calls when he had not seen the bills: "In addition, we note plaintiff's statement in his deposition that he did not read or pay the bills himself, delegating those duties to his secretary. Accordingly, plaintiff could not have been misled by the allegedly deceptive nature of the bills." *Zekman*, 182 Ill. 2d at 375.

Chief Justice Harrison dissented in *Oliveira*, particularly taking issue with the majority's assertion that it must have been the plaintiff who was deceived by the advertising:

> "The majority's justification for reaching a contrary result is misguided. While it is true that someone must have been deceived in order to sustain a private cause of action for damages under the Consumer Fraud and Deceptive Practices Act, there is no requirement in the statute that it be the plaintiff. If others were deceived and acted in reliance on the deception in a way that harmed the plaintiff, the plaintiff is entitled to seek recovery for his damages under the Act even if he, himself, was not misled." *Oliveira*, 201 Ill. 2d at 158 (Harrison, C.J., dissenting).

No other Justice joined Chief Justice Harrison's dissent, but it finds new life in the majority's *dicta*.

Today's case presented us with the opportunity to clarify once and for all the meaning of our cases in this area. Instead, the majority has issued an opinion that will further muddy the water. What will the bench and bar make of this case law in the future? In the main part of this opinion, we say for the third consecutive time that deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives *the*

*plaintiff.* The opinion then concludes with the seeming assertion that, if the facts were different, we would overrule *Oliveira* and go with the position expressed by Chief Justice Harrison in his dissent—that "[i]f others were deceived and acted in reliance on the deception in a way that harmed the plaintiff, the plaintiff is entitled to seek recovery for his damages under the Act even if he, himself, was not misled." *Oliveira,* 201 Ill. 2d at 158 (Harrison, C.J., dissenting). The majority notes that in his dissent to the appellate court opinion, Justice Turner stated that he found "the majority's insouciance to our supreme court's decision in *Oliveira* vexing." 336 Ill. App. 3d at 546 (Turner, J., dissenting). I find *this court's* insouciance to our decision in *Oliveira* vexing.

For these reasons, I concur with the majority's holding in this case, but cannot join the contradictory advisory opinion tacked on to the end.

JUSTICE GARMAN joins in this special concurrence.