THIRD DIVISION
December 9, 2009

Nos. 1-08-1347 & 1-08-1378 (consolidated)

| | | |
|---|---|---|
| JUDITH HIRSCH, | ) | Appeal from the Circuit |
| | ) | Court of Cook County, Illinois |
| Plaintiff-Appellee and Cross-Appellant, | ) | |
| | ) | No. 05 CH 6841 |
| v. | ) | |
| | ) | Honorable Martin Agran, |
| OPTIMA, INC., an Illinois Corporation, | ) | Judge Presiding |
| | ) | |
| Defendant-Appellant and Cross-Appellee | ) | |
| | ) | |
| (John H. Kelsey and Coromandel Town Home | ) | |
| Association, | ) | |
| | ) | |
| Defendants). | ) | |

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

After plaintiff, Judith Hirsch, purchased a townhouse from defendant John Kelsey in 2002, the basement flooded. On April 18, 2005, plaintiff sued Kelsey, the seller of the townhouse; Coromandel Town Home Association, the homeowner's association; and Optima, Inc., the builder. The trial court dismissed with prejudice plaintiff's case against Optima but later granted in part plaintiff's petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)) based on newly discovered evidence. On appeal, Optima argues that the trial court erred in granting plaintiff's petition because the evidence was not new. Plaintiff cross-appeals the trial court's partial denial of her petition.

## I. BACKGROUND

Plaintiff filed a complaint and two amended complaints alleging that Optima designed and constructed the townhouse at 415 Milford Road in Deerfield, Illinois, in 1994 and 1995. In June or July 2001, when Kelsey owned the property, "there was a leakage of water in the basement through a crack in the foundation." Kelsey notified Optima and Coromandel of the problem, and they concluded that the flooding was due to the improper design and installation of the drain-tile storm-water discharge system around the foundation of the unit. They arranged for Roto-Rooter to fix the problem and to do maintenance work on the drain-tile storm-water discharge system on a biannual basis.

Kelsey sold the property to plaintiff in 2002. None of the defendants informed plaintiff that there was a problem with the drain tiles or that the repairs were not permanent. The real property disclosure report completed by Kelsey indicated that he was not "aware of flooding or recurring leakage problems in the crawlspace or in the basement" or of "material defects in the basement in foundation (including cracks and bulges)." Furthermore, defendants cancelled the biannual servicing by Roto-Rooter on the property. In June 2003 and March 2005, plaintiff's basement flooded. The second amended complaint alleged that Optima breached the implied warranty of habitability and negligently performed a voluntary undertaking. These counts were dismissed with prejudice on December 13, 2006, for failure to state a claim.

On January 10, 2007, plaintiff filed a motion for reconsideration. In March 2007, between filing the motion and the court's decision, plaintiff received answers to interrogatories that she had served on Kelsey. These answers provided that there was "some seepage" in the

basement in 1997 and one leak in June or July 2001 and that Optima and Coromandel undertook to repair the problem on both occasions. Plaintiff did not raise Kelsey's responses about the 1997 seepage during the proceedings on her motion for reconsideration. The hearing on plaintiff's motion occurred on May 10, 2007, and the trial court denied the motion on June 6, 2007.

On July 17, 2007, Kelsey filed a motion for leave to file an amended counterclaim against Optima and Coromandel. It alleged that in 1997, Kelsey "observed water accumulation" in the basement of the townhouse and that he contacted Optima and Coromandel, which undertook to remedy the problem. In 2000, water accumulated in another part of the basement, and Optima and Coromandel again took care of it.

Plaintiff filed a motion for leave to file a third amended complaint on August 10, 2007. The motion argued that Kelsey's July 17, 2007, motion for leave to file an amended counterclaim raised new facts regarding the relationship among defendants, that a recently decided case affirmed the correctness of her position, and that "a motion to reconsider would be appropriate, given the discovery of new facts not previously discoverable."

The proposed third amended complaint alleged that Kelsey informed Optima and Coromandel in 1997 that there was "a leakage of water into the basement" of the townhouse and that when Kelsey decided to sell the townhouse, Optima advised him that he did not have to disclose the history of flooding or water seepage. Thus, the proposed complaint alleged, Kelsey's misrepresentations were made "with the knowledge and blessing" of Optima. After the flooding in 2003, Optima continued to misrepresent its prior knowledge of the defective drain-

tile storm-water discharge system. In addition to breach of the warranty of habitability and negligent performance of a voluntary undertaking, which were alleged in earlier complaints, the proposed third amended complaint alleged that Optima engaged in fraudulent misrepresentation and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)).

On September 5, 2007, the trial court denied plaintiff's motion for leave to file the third amended complaint as to Optima. It noted that the proposed third amended complaint "does not state a new cause of action or a sufficient cause of action against Optima." Accordingly, the court found that the order dismissing Optima with prejudice would stand. It entered a Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) finding as to the dismissal with prejudice of plaintiff's claims against Optima and the denial of plaintiff's motion for leave to file a third amended complaint against Optima.

On October 2, 2007, plaintiff filed a notice of appeal as to the court's September 5, 2007, order. On January 22, 2008, while her appeal was pending, plaintiff was granted leave to file a section 2-1401 petition for relief from judgment based on the discovery of new facts.

The petition cited the following: (1) Kelsey's July 17, 2007, motion for leave to file an amended counterclaim, from which plaintiff "learned for the first time that the property had flooded as early as 1997"; (2) Kelsey's December 21, 2007, affidavit, wherein Kelsey "for the first time admitted in a document submitted to this Court" that he called Optima and Coromandel before completing the disclosure report; and (3) records from Roto-Rooter that Kelsey filed in his December 21, 2007, response to Optima's motion to dismiss his second amended counterclaim,

showing that the company was at the townhouse at least six times between 1997 and 2002 for rodding and jetting out the drain tiles. According to the petition, the Roto-Rooter records demonstrated that Optima repeatedly misrepresented to the court its level of involvement in the maintenance of the drain-tile storm-water discharge system. In addition, plaintiff asserted that Optima's representations in earlier pleadings that it did not enter into a maintenance agreement with Roto-Rooter until 2003 was refuted by the cited new facts. Plaintiff sought an order vacating the dismissal with prejudice of her two claims against Optima and permitting her to file the third amended complaint that the court previously would not permit her to file.

On April 30, 2008, the trial court granted the petition in part and denied it in part. The trial court found that plaintiff alleged a meritorious claim or defense as to her claim for breach of warranty. Relying on Kelsey's amended counterclaim, the court found that the allegation that the basement first flooded in 1997 was "relevant because in dismissing the breach of warranty count, the Court relied on the amount of time that had elapsed between the construction of the Townhome and the first occurrence of flooding." It continued:

"In dismissing the Second Amended Complaint the Court found that the basement defect did not arise until six years after construction of the Townhome. The Court found that six years did not satisfy the 'reasonable time' standard for determining whether subsequent purchasers are entitled to protection of the warranty of habitability. However, it now appears that the basement did experience flooding in 1997. Thus, in fact, the basement's defect manifested itself approximately two years after the completion of the Townhome. Although

1-08-1347 & 1-08-1378 (cons.)

guideposts for decision making with respect to the 'reasonable time' standard of *Redarowicz* are sparse, this lapse of time is much more reasonable than six years. As such, had the Court been presented the additional facts in connection with the motion to dismiss the Second Amended Complaint, the Court would have likely denied the motion to dismiss."

The court further concluded that "it is not likely" that plaintiff's failure to present the new facts was caused by her own negligence, as she first learned of them when they were presented in Kelsey's motion for leave to file an amended counterclaim, which was filed in July 2007, the month after the court dismissed the second amended complaint with prejudice. It also noted that while "six months is a significant amount of time, it is not such a significant amount of time so as to find Hirsch dilatory in filing the petition." Therefore, the court granted plaintiff's petition with respect to the breach of warranty count.

The court concluded that its decision to dismiss the negligent performance of a voluntary undertaking count was not dependent on the amount of time that elapsed before the basement defect was discovered; rather, the court "dismissed this count because Hirsch could not plead reliance on Optima's agreement to have Roto-Rooter service the drains." The court further found that the proposed third amended complaint failed to state a cause of action for fraudulent misrepresentation or a violation of the Consumer Fraud Act. Accordingly, the court denied plaintiff's petition for relief from judgment with respect to the voluntary undertaking count, and it denied plaintiff leave to file a third amended complaint.

On May 20, 2008, this court granted plaintiff's motion to withdraw her appeal in case No.

1-08-1347 & 1-08-1378 (cons.)

1-07-2736. The record on appeal had been filed, and plaintiff filed her motion to withdraw the appeal the day after her opening brief was due.

Defendant appeals the trial court's granting of relief from judgment as to the warranty of habitability claim. See 210 Ill. 2d R. 304(b)(3). Plaintiff cross-appeals the trial court's denial of her petition for relief from judgment with respect to the voluntary undertaking count and her request to file a third amended complaint.

## II. ANALYSIS

Section 2-1401 of the Code of Civil Procedure provides a comprehensive procedure by which final orders, judgments, and decrees may be vacated "after 30 days from the entry thereof." 735 ILCS 5/2-1401(a) (West 2006). The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the trial court's previous application of existing law. *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1140 (2004). "To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). Section 2-1401 "does not afford a remedy to relieve a litigant of the consequences of his own mistakes or his counsel's negligence." *La Rabida Children's Hospital & Research Center v. Harrison*, 263 Ill. App. 3d 790, 796 (1994). Whether a section 2-1401 petition should be granted lies within the sound discretion of the trial court,

1-08-1347 & 1-08-1378 (cons.)

depending on the facts and equities presented. *Robinson v. Ryan*, 372 Ill. App. 3d 167, 173 (2007). A trial court abuses its discretion if it fails to apply the proper criteria when it reviews the facts, and a reviewing court must consider both the legal adequacy of the way the trial court reached its result as well as whether the result is within the bounds of reason. *Robinson*, 372 Ill. App. 3d at 173.

On appeal, Optima argues that the trial court erred in granting plaintiff's section 2-1401 petition as to plaintiff's claim for the implied warranty of habitability claim because, *inter alia*, the "newly discovered information" was not new. On cross-appeal, plaintiff contends that the trial court erred when it denied her petition as to her claims for negligent performance of a voluntary undertaking, common law fraud, and consumer fraud. Optima argues that this court lacks jurisdiction to address plaintiff's cross-appeal. Because Optima cites no authority in support of its position, we find it waived. 210 Ill. 2d R. 341(h)(7).

A. Diligence in Presenting Claim in the Original Action

Optima contends that the "new" facts alleged in plaintiff's section 2-1401 petition were not only known before the time of judgment, but were raised before and rejected by the trial court when it denied plaintiff's motion for leave to file a third amended complaint as to Optima. First, we note that the parties and the trial court each rely on different dates for when plaintiff first learned of the "new" information. On appeal, Optima relies extensively on the March 2007 interrogatory responses as providing the "new" information. We note that Optima's motion to dismiss the section 2-1401 petition did not cite Kelsey's March 2007 interrogatory responses, which provided that there was "some seepage" in the basement in 1997. Instead, Optima's

-8-

1-08-1347 & 1-08-1378 (cons.)

motion claimed that plaintiff knew that the townhouse flooded in 1997 because Kelsey filed a motion for leave to file a counterclaim on April 18, 2007, which "alleged facts that Optima knew of the leakage and took steps to fix the leak." Significantly, however, the original counterclaim made no mention of the 1997 date; it was Kelsey's motion for leave to file an amended counterclaim, filed in July 2007, that did. Thus, having failed to argue in the trial court that plaintiff knew of the "new" information when she received the interrogatory responses in March 2007, Optima is not permitted to do so on appeal. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009). See also *Johnson v. Burlington Northern, Inc.*, 107 Ill. App. 3d 130, 138 (1982) (parties to an appeal must adhere to the theory presented to the trial court and that theory must be treated as the law of the case on appeal).

In fact, the trial court relied on two dates when it granted plaintiff's petition: the July 2007 motion for leave to file an amended counterclaim and the Roto-Rooter records that were filed by Kelsey in December 2007. The trial court found that plaintiff first learned of these facts when they were presented in Kelsey's motion for leave to file an amended counterclaim, which was filed in July 2007, "the month after the Court dismissed the Second Amended Complaint with prejudice." Further, the "granting of motions to stay discovery in the case makes [it] likely that Hirsch would not have been able to discover these facts of her own volition. It was not until December 21, 2007 that the Roto-Rooter records were filed by Kelsey." Accordingly, the trial court found that "it is not likely that the failure to present the facts was caused by Hirsch's own negligence."

In *Smith v. Airoom*, 114 Ill. 2d 209 (1986), our supreme court noted that section 2-1401

-9-

"does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence." *Smith*, 114 Ill. 2d at 222. Therefore, a party relying on section 2-1401 "is not entitled to relief 'unless he shows that through no fault or negligence of his own, the error of fact *** was not made to appear to the trial court.' " *Smith*, 114 Ill. 2d at 222, quoting *Brockmeyer v. Duncan*, 18 Ill. 2d 502, 505 (1960). Furthermore, section 2-1401 is not a substitute for an appeal, nor can it be used to shield a litigant from the consequences of his own mistakes or his counsel's negligence. *Shapira v. Lutheran General Hospital*, 199 Ill. App. 3d 479, 483 (1990). "Consistent with the strong judicial policy favoring finality of judgments, our courts have held that a section 2-1401 petition is not to be used as a device to relitigate issues already decided or to put in issue matters which have previously been or could have been adjudicated." *In re Marriage of Halas*, 173 Ill. App. 3d 218, 223 (1988). See also *Stacke v. Bates*, 225 Ill. App. 3d 1050, 1054 (1992); *Shapira*, 199 Ill. App. 3d at 483 ("The section 2-1401 remedy was not intended to put in issue matters that previously could have been adjudicated"); *In re Marriage of Ohlson*, 126 Ill. App. 3d 374, 381 (1984); *Davis v. Chicago Transit Authority*, 82 Ill. App. 3d 987, 989 (1980).

Optima argues that plaintiff's petition raised matters that not only *could* have been adjudicated, but that *were* presented to the court and rejected. Plaintiff received Kelsey's amended counterclaim in July 2007, after the dismissal of Optima from plaintiff's case and the denial of plaintiff's motion for reconsideration. On August 10, 2007, plaintiff filed a motion for leave to file a third amended complaint, which specifically argued that Kelsey's July 17, 2007, motion for leave to file an amended counterclaim raised new facts. The trial court denied

1-08-1347 & 1-08-1378 (cons.)

plaintiff's motion as to Optima and granted her Rule 304(a) language. Plaintiff filed an appeal, filed a section 2-1401 petition, and withdrew the appeal after the section 2-1401 petition was granted.

Generally, errors of fact on which a section 2-1401 petition is based must not have been known to the court or the moving party at the time of judgment. *Lubbers v. Norfolk & Western Ry. Co.*, 105 Ill. 2d 201, 209-10 (1985). However, "[t]his rule does not operate to preclude petitions based on newly discovered evidence bearing on the ultimate issue of the original trial, particularly where the prevailing party has engaged in fraudulent conduct designed to conceal the evidence from the petitioner before trial." *Lubbers*, 105 Ill. 2d at 210. The evidence that plaintiff cited in her petition bore "on the ultimate issue of the original trial," which was Optima's level of participation in the maintenance of the drain-tile system and the time period during which it did so. Throughout the trial court proceedings, Optima insisted that before 2003, it had nothing to do with the maintenance of the drain system. For example, in its motion to dismiss the second amended complaint, Optima refuted plaintiff's allegation that it undertook a duty to provide biannual maintenance to the drain system in 2001 and stopped doing so at some time in the future by claiming that "Optima did not even enter into the Maintenance Agreement until September of 2003. Accordingly, Hirsch's claim that Optima entered into a 2001 agreement and cancelled it when she moved in is patently wrong." In its reply to its motion to dismiss the second amended complaint, Optima further claimed:

> "Here, Hirsch's theory that Optima voluntarily undertook a duty to provide
> bi-annual maintenance to the drain system in 2001 and stopped doing so at

-11-

sometime in the future is baseless and unsupported by facts. Instead, the facts support that Optima fulfilled the agreement that was in place. The September 2003 Maintenance Agreement between Optima and Coromandel provides that Optima would ensure that the drain and sump basin of the townhome would be serviced twice per year commencing from September 17, 2003 at a cost of only $250 to Coromandel."

The information that plaintiff raised in her section 2-1401 petition demonstrates that defendant's representations were false or misleading. The Roto-Rooter records showed that the company was at the property at least six times between March 1997 and March 2002 for rodding and jetting. These tickets list the property's address, and many list Optima's phone number and show Optima as the client. T.J. Lenick, Optima's vice-president, was also referenced in several of the tickets.

Optima contends that the representations were merely challenging the sufficiency of the complaint under section 2-615 of the Code of Civil Procedure. However, the motion to dismiss the second amended complaint was filed pursuant to both sections 2-615 and 2-619, and Optima filed numerous exhibits in support, including the affidavit of Matt Cison and the maintenance agreement. Cison, a vice-president of Optima, said that the September 17, 2003, maintenance agreement "is the first and only Maintenance Agreement entered into by Optima, Inc. and Coromandel Townhome Association for service to the drain-tile storm water discharge system for the townhome at issue in this litigation." While it may have been the first written contract, it was certainly not the first agreement that Optima entered into to service the drain tile system.

1-08-1347 & 1-08-1378 (cons.)

Optima also argues that the Roto-Rooter records provided no new facts of significance because plaintiff already knew that Roto-Rooter serviced the property on multiple occasions. However, the initial complaints alleged that the first leakage occurred in June or July of 2001, after which they entered into the agreement--not that the first water issue was in 1997 and that Optima undertook to service the drain system then.

"One of the guiding principles *** in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court." *Smith*, 114 Ill. 2d at 225. The power to set aside a judgment, and thus allow a litigant to have his or her day in court, " 'is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and [for the] furtherance of justice.' " *Smith*, 114 Ill. 2d at 225, quoting *Diner's Club, Inc. v. Gronwald*, 43 Ill. App. 3d 164, 168 (1976); *Spencer v. American United Cab Ass'n*, 59 Ill. App. 2d 165, 172 (1965); *Lubbers*, 105 Ill. 2d at 210. Upon discovering that its previous position was incorrect, the trial court properly corrected itself.

We also find the cases cited by Optima to be distinguishable because they analyze whether the trial court properly *denied* a petition because the evidence was in the movant's possession. *Rahill Corp. v. Urbanski*, 123 Ill. App. 3d 769, 778 (1984); *Kosten v. St. Anne's Hospital*, 132 Ill. App. 3d 1073, 1080 (1985) (revised affidavit attached to petition did not provide new information); *Gas Power, Inc. v. Forsythe Gas Co.*, 249 Ill. App. 3d 255 (1993).

### B. Diligence in Filing Petition

Optima argues that plaintiff lacked diligence in filing her petition where she "was aware of and sat on the information from March through August and then, post-judgment, inexplicably

waited until late January to file her petition." Plaintiff responds that her petition was filed within a month after Kelsey produced the Roto-Rooter records in December 2007. However, it was the July 2007 date, not March or December, that the trial court relied on in assessing plaintiff's diligence. The court found that "[a]lthough six months is a significant amount of time, it is not such a significant amount of time so as to find Hirsch dilatory in filing the petition."

"No bright-line rule exists for judging whether a petitioner has acted diligently. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances." *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99-100 (2006), citing *Airoom*, 114 Ill. 2d at 222. In determining the reasonableness of the excuse offered by the petitioner, the court must consider all of the circumstances attendant upon entry of the judgment, including the conduct of the litigants and their attorneys. *Airoom*, 114 Ill. 2d at 222. *Paul* found that "a six-month delay in requesting section 2-1401 relief does not, *ipso facto*, demonstrate a fatal lack of diligence." *Paul*, 223 Ill. 2d at 100. In addition, while Optima argues that plaintiff was not diligent because she did not subpoena the service records from Roto-Rooter, the trial court found that the "granting of motions to stay discovery in the case makes [it] likely that Hirsch would not have been able to discover these facts of her own volition."

More important, the equitable powers of the trial court are invoked when it rules on a section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. A section 2-1401 petition "must be decided according to the principles of fundamental fairness [and] the object of preventing injury and seeking the furtherance of justice." *Commercial National Bank of Chicago v. Mehta*, 144 Ill. App. 3d 924, 930 (1986). When "evidence of unconscionable behavior is presented, the

requirement of due diligence need not be rigidly enforced." *Gas Power Inc. v. Forsythe Gas Co.*, 249 Ill. App. 3d 255, 263 (1993). See *Lubbers v. Norfolk & Western Ry. Co.*, 105 Ill. 2d 201, 210-11 (1985). The trial court apparently recognized this when it held that "the interest of fairness and substantial justice compel the exercise of the equitable powers of this court." "The appellate court will be loathe [*sic*] to overturn a decision on a petition to vacate when that decision rests on equitable considerations unless an abuse of discretion by the trial court is clearly established." *Zee Jay, Inc. v. Illinois Insurance Guaranty Fund*, 194 Ill. App. 3d 1098, 1103 (1990).

"Where a reasonable excuse is shown, a party should be allowed to have its day in court, provided no prejudice results to the other party." *Cunningham v. Miller's General Insurance Co.*, 188 Ill. App. 3d 689, 695 (1989), citing *Verson Allsteel Press Co. v. Mackworth Rees*, 99 Ill. App. 3d 789, 793 (1981). For example, with the passage of time, parties may change their position or destroy or misplace crucial evidence. That is hardly the case here. Optima knew of the leakage in 1997. It also knew of the agreement with Roto-Rooter, as it was Optima that engaged its services. Optima knew of Kelsey's false statement regarding the leakage, since Optima advised Kelsey not to disclose the leakage. Optima knew that Roto-Rooter's services were being terminated; Optima cancelled the biannual servicing by Roto-Rooter on the property. There is no evidence that Optima was prejudiced by the six-month delay in bringing the petition. Accordingly, we find that the trial court did not err in finding that plaintiff was diligent in filing her petition.

C. Meritorious Claim

1. *Implied warranty of habitability*

The trial court concluded that plaintiff presented a meritorious claim for breach of warranty of habitability. Citing *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171 (1982), the trial court found that if it had known that the defect had manifested itself only two years after the completion of the townhouse instead of six, it would not have dismissed the second amended complaint.

The implied warranty of habitability has been adopted by our courts to protect purchasers of new homes upon discovery of latent defects. *Cotter v. Parrish*, 166 Ill. App. 3d 836, 840 (1988). In *Redarowicz*, our supreme court held:

> "Like the initial purchasers, the subsequent purchaser is usually not knowledgeable
> in construction practices and must, to a substantial degree, rely upon the expertise
> of the person who built the home. If construction of a new house is defective, its
> repair costs should be borne by the responsible builder-vendor who created the
> latent defect." *Redarowicz*, 92 Ill. 2d at 183.

"The compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser; in these circumstances the implied warranty of habitability survives a change of hands in the ownership." *Redarowicz*, 92 Ill. 2d at 183. The court limited its holding, however, to latent defects that "manifest themselves within a reasonable time after the purchase of the house" by the original owner. *Redarowicz*, 92 Ill. 2d at 185. See *Swaw v. Ortell*, 137 Ill. App. 3d 60, 72 (1984).

In dismissing the warranty count, the trial court relied on the amount of time that had

elapsed between the construction of the townhouse and the first occurrence of the flooding; it initially dismissed the claim because the defect arose six years after construction, which the court concluded did not satisfy the "reasonable time" standard for determining whether a subsequent purchaser is entitled to protection of the warranty of habitability. In her section 2-1401 petition, plaintiff alleged that the defect first manifested itself not in 2001, as originally alleged in her complaint, but in 1997, only two years after the completion of the townhouse. The trial court found that while guideposts for what constitutes a "reasonable time" are sparse, this two-year lapse of time "is much more reasonable than six years."

Optima argues that the trial court erred because *Redarowicz* contemplates time passage in ownership as the determining factor in whether an implied warranty survives a change in ownership. Optima relies on the supreme court's statements that the policy underlying the warranty of habitability should not be frustrated because of "the short intervening ownership of the first purchaser" and that the subsequent purchaser should not be denied the protection of the warranty "because he happened to purchase the home about one year after the original buyer." *Redarowicz*, 92 Ill. 2d at 183, 185. Optima contends that plaintiff bought the townhouse seven to eight years after it was built, and "the alleged 1997 water issues do not shorten this seven to eight year period of the first purchaser's intervening ownership."

*Redarowicz* held that for a subsequent purchaser to maintain a lawsuit against the builder, latent defects must manifest themselves within a reasonable time after the purchase of the house by the original owner. *Redarowicz*, 92 Ill. 2d at 185. Similarly, *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426, 434 (1997), concluded that "the reasonable time for bringing

1-08-1347 & 1-08-1378 (cons.)

a cause of action under the 'reasonable time' standard of *Redarowicz* begins with the act or omission causing the defect rather than the date on which the subsequent purchaser takes title to the property." *VonHoldt*, 175 Ill. 2d at 434. Therefore, the fact that the defect manifested itself only two years after Kelsey bought the house, instead of the six years originally pled in the complaint, is highly relevant to the analysis of plaintiff's section 2-1401 petition. See *VonHoldt*, 175 Ill. 2d at 434 (11-year period between act or omission causing the defect and the time the action was brought was unreasonable to hold the builder liable); *Redarowicz*, 92 Ill. 2d at 185 (one year was reasonable); *Eickmeyer v. Blietz Organization, Inc.*, 284 Ill. App. 3d 134 (1996) (not reasonable where defect manifested itself 14 years after original sale of home).

Accordingly, we conclude that the trial court did not err when it found that plaintiff presented a meritorious claim for breach of the implied warranty of merchantability when the two-year time period between the completion of the townhouse and the manifestation of the defect "is much more reasonable than six years."

### 2. *Fraud*

The proposed third amended complaint alleged new counts for fraudulent misrepresentation and consumer fraud. Plaintiff alleged that when Kelsey decided to sell the townhouse, he contacted an Optima representative, who told him that he did not have to disclose the history of flooding, water seepage, or defects in the basement or foundation, despite knowing that Kelsey would convey this information to potential purchasers in the residential real property disclosure report. It was alleged that this misrepresentation would allow Optima to escape its costly maintenance obligations. The trial court denied plaintiff leave to add claims for fraudulent

-18-

1-08-1347 & 1-08-1378 (cons.)

misrepresentation and consumer fraud because she "fails to allege that Optima made any misrepresentations to her." The court rejected plaintiff's argument that Optima's statements to Kelsey were sufficient to state a claim for fraud, finding the supreme court's discussion of "indirect misrepresentation" in *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004), was *dicta*. The court relied on this court's statement in *County of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d 55, 61 n.1 (2004), that "[i]n *dicta*, the [*Shannon*] court suggested that if the plaintiffs had been 'indirectly' deceived because the builder or architect had been deceived, [the] proximate cause requirement under the Fraud Act could be satisfied."

To establish a claim for common law fraud, a plaintiff must allege: (1) a false statement of material fact, (2) the party making the statement knew or believed it to be untrue, (3) the party to whom the statement was made had a right to rely on the statement, (4) the party to whom the statement was made did rely on the statement, (5) the statement was made for the purpose of inducing the other party to act, and (6) the reliance by the person to whom the statement was made led to that person's injury. *Siegel v. Levy Organization Development Co., Inc.*, 153 Ill. 2d 534, 542-43 (1992). There is a high standard of specificity for pleading claims of fraud. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 31 (2003). "The facts must be [pled] with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer." *Cwikla*, 345 Ill. App. 3d at 31. The pleadings must contain specific allegations from which fraud is the necessary or probable inference, including what representations were made, when they were made, who made the representations, and to whom they were made. *Cwikla*, 345 Ill. App. 3d at 31.

-19-

1-08-1347 & 1-08-1378 (cons.)

In *Siegel*, the court found that "so long as the alleged deception occurred in a course of conduct involving trade or commerce, facts satisfying a claim for common law fraud will necessarily satisfy a claim" under the Consumer Fraud Act. *Siegel*, 153 Ill. 2d at 543. See also *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996) (a complaint alleging a consumer fraud violation must be pled with the same particularity as that required for common law fraud). A private cause of action brought under section 10a(a) of the Consumer Fraud Act requires proof of "actual damage" that occurred "as a result of" the deceptive act or practice. 815 ILCS 505/10a(a) (West 2006). This language imposes a proximate-cause requirement. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002).

Plaintiff argues that the trial court erred in concluding that she could not pursue a fraud claim against Optima where Optima knowingly gave Kelsey false information with the intent that Kelsey give that information to plaintiff. She disputes that *Shannon*'s "indirect misrepresentation" language was *dicta* and argues that even if it was, this court must follow it. We agree and find that even if the relevant language in *Shannon* could be considered *dicta*, earlier cases by our supreme court have recognized the potential for an indirect misrepresentation claim.

In *Oliveira*, a putative class action against a gasoline company under the Consumer Fraud Act, the plaintiff alleged that Amoco engaged in a deceptive advertising campaign for its premium gasolines. *Oliveira*, 201 Ill. 2d at 140. The plaintiff did not allege that the advertisements induced him to buy the gasoline, nor did he allege that he saw, heard, or read any of the allegedly deceptive advertisements. *Oliveira*, 201 Ill. 2d at 140. Instead, he alleged that

-20-

1-08-1347 & 1-08-1378 (cons.)

he was damaged because the ads created an "artificially inflated" price for the gasoline he purchased. *Oliveira*, 201 Ill. 2d at 140. The court rejected the plaintiff's "market theory" of proximate causation and found that the plaintiff failed to allege that he was deceived by the ads: "Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance." *Oliveira*, 201 Ill. 2d at 155.

In *Shannon*, a putative class action of homeowners asserted, *inter alia*, a claim under the Consumer Fraud Act alleging that the defendant's composite wood siding was defective and that the defendant deceptively advertised the composite siding. None of the homeowners received any representations regarding the siding from the defendant, and the complaint did not allege that any named builder, architect, or engineer had received defendant's product literature. The plaintiffs claimed that the defendant's alleged deceptions created a market for their product that would not otherwise exist, thus resulting in its use on their homes and the plaintiffs' ultimate damages. *Shannon*, 208 Ill. 2d at 525. On appeal, our supreme court, relying on *Oliveira*, held that "deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff." *Shannon*, 208 Ill. 2d at 525. Because the advertising "did not in any way deceive the plaintiffs, [it] could not have proximately caused the claimed damages, whatever their nature." *Shannon*, 208 Ill. 2d at 525.

The court continued that although "proof of actual deception of a plaintiff is required, this is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act." *Shannon*, 208 Ill. 2d at 525-26.

"For instance, if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred 'as a result of' the indirect deception, as required by section 10(a) of the Act (815 ILCS 505/10a(a) (West 2000)). In those circumstances, the purchaser, who may have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect, or contractor, who reasonably should have had correct knowledge. Plaintiffs did not plead any facts to support that theory at any time." *Shannon*, 208 Ill. 2d at 526.

*Shannon* cited *St. Joseph Hospital v. Corbetta Construction Co.*, 21 Ill. App. 3d 925 (1974). In *St. Joseph*, a hospital asserted a common law fraud claim against the manufacturer-supplier of wall paneling based on that defendant's failure to disclose to the architect and builder that testing had revealed the paneling to have a flame spread of 17 times the maximum allowed under the building code. *Shannon*, 208 Ill. 2d at 526, citing *St. Joseph*, 21 Ill. App. 3d at 956-57. The court in *St. Joseph* noted that traditional privity was not a requirement in fraud actions and held that " '[i]t is enough that the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and he does rely upon it, to his damage.' " *Shannon*, 208 Ill. 2d at 526, quoting *St. Joseph*, 21 Ill. App. 3d at 954. While the misrepresentation to the architect and builder in *St. Joseph* ultimately deceived the hospital, the record in *Shannon* "does not support a finding of indirect deception." *Shannon*, 208 Ill. 2d at

1-08-1347 & 1-08-1378 (cons.)

527.[1]

In his affidavit, which plaintiff cited in her section 2-1401 petition, Kelsey averred that while his basement was being finished, he observed water accumulation on the floor. He talked to T.J. Lenick from Optima, who said he would remedy the problem. Kelsey was not sure what steps were taken to fix the problem. A couple of days after he first reported the water accumulation to Lenick, Kelsey spoke to him again, and Lenick told him that "the problem had been taken care of and was repaired." Kelsey had no further problems until 2000 or 2001, when he noticed water coming through the basement wall in a different location than where he previously noticed water accumulation. Kelsey reported the issue to Lenick, who said he would inspect the problem and resolve the issue. Kelsey was not sure what was done to repair the second water issue, but several days later, he again spoke to Lenick, who told Kelsey "that he had inspected the area and that steps had been taken to ensure that the problem would not cause additional water accumulation in the basement. Mr. Lenick specifically promised me that there was nothing wrong with our basement."

Kelsey further stated that before he placed his townhouse on the market, he spoke to Optima and Coromandel, who both assured him that no problems existed with the townhouse's basement. In reliance on their assurances, he completed the real estate disclosure form stating

---

[1] In *DeBouse v. Bayer AG*, 385 Ill. App. 3d 812, 819-20 (2008), *appeal allowed*, 231 Ill. 2d 630 (2009), the Fifth District extended *Shannon*'s concept of "indirect deception" to a claim of "indirect deception by silent concealment" where a drug manufacturer allegedly concealed information about the drug's safety and efficacy from the plaintiff's physician and pharmacist.

that there were no leaking or flooding problems in the basement. He stated that Optima never told him that it hired Roto-Rooter to do ongoing work on the drain-tile system; Optima told him that the problem had been resolved, not that it hired Roto-Rooter to continuously service the system.

Unlike the plaintiff in *Shannon*, plaintiff in the instant case has alleged sufficient facts to show that plaintiff's damages occurred "as a result of" Optima's indirect deception, as Optima misrepresented to Kelsey that the water problem was fixed, and Kelsey completed the real estate disclosure form in reliance on Optima's assurances. Furthermore, where Kelsey contacted Optima about the basement before he put the townhouse on the market, Optima's assurance to Kelsey that there were no problems with the basement was " 'made with the intention that it reach the plaintiff and influence his action.' " *Shannon*, 208 Ill. 2d at 526, quoting *St. Joseph*, 21 Ill. App. 3d at 954. Plaintiff alleged that Kelsey's misrepresentations, "made with the knowledge and blessing" of Optima, induced her to purchase the property. Accordingly, we conclude that plaintiff stated a claim for fraudulent misrepresentation and consumer fraud.

### 3. *Voluntary undertaking*

The trial court found that plaintiff failed to allege a meritorious claim under section 2-1401 for negligent performance of a voluntary undertaking because its decision to dismiss the voluntary undertaking count was not dependent on the amount of time that lapsed before the basement defect was discovered. "Rather, the court dismissed this count because Hirsch could not plead reliance on Optima's agreement to have Roto-Rooter service the drains. Moreover, none of the other 'new facts' would have changed the court's decision."

1-08-1347 & 1-08-1378 (cons.)

Whether a defendant has voluntarily undertaken a legal duty to a plaintiff is a question of law. *Iseberg v. Gross*, 366 Ill. App. 3d 857, 864 (2006). Any duty imposed on a defendant under this theory is limited to the extent of the undertaking. *Iseberg*, 366 Ill. App. 3d at 864. Illinois courts have adopted section 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts §324A (1965)) to analyze voluntary undertaking claims. *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 211 (1979); *Iseberg*, 366 Ill. App. 3d at 864. Section 324A provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts §324A (1965).

"The essential element of the voluntary undertaking doctrine is an undertaking, and the duty of care imposed on a defendant is limited to the extent of his undertaking." *Iseberg*, 366 Ill. App. 3d at 865, citing *Bailey v. Edward Hines Lumber Co.*, 308 Ill. App. 3d 58, 66 (1999).

-25-

Plaintiff argues that the trial court incorrectly relied on section 323 of the Restatement (Second) of Torts (1965) instead of section 324A and that her complaint stated a claim for negligent performance of a voluntary undertaking. Section 323 provides as follows:

"One who undertakes, gratuitously or for consideration, to render services for another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if,

(a) his failure to exercise such care increases the risk of such harm,

or

(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

See also *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 319-20 (1980).

The trial court did cite section 323 instead of section 324A, which relates to liability to a third person, when it denied plaintiff's motion for reconsideration. When it denied plaintiff's section 2-1401 petition as to the voluntary undertaking claim, the court found that it originally dismissed the count "because Hirsch could not plead reliance on Optima's agreement to have Roto-Rooter service the drains." Under section 324A, however, reliance is not the only route for establishing liability. Rather, a person is liable to a third person for negligent performance of a voluntary undertaking when (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

1-08-1347 & 1-08-1378 (cons.)

Restatement (Second) of Torts §324A (1965). Plaintiff relies on prong (a), which does not require reliance. Furthermore, even if reliance were the only path, section 324A requires that it be by "the other" *or* "the third person"--not just "the other," *i.e.*, Kelsey, as the trial court seemed to hold. See *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 391 (1986).

Optima does not address the sufficiency of plaintiff's voluntary undertaking claim, except to argue that the new facts alleged in her petition do not alter her inability to plead reliance. As we found above, however, plaintiff does not need to plead reliance under prong (a). Therefore, we find that the court erred when it concluded that plaintiff could not state a meritorious claim because she did not plead reliance.

### III. CONCLUSION

We conclude that the trial court properly granted plaintiff's section 2-1401 petition as to her claim for the implied warranty of habitability but improperly denied her petition as to her claims for consumer fraud, common law fraud, and negligent performance of a voluntary undertaking.

Affirmed in part and reversed in part; cause remanded.

QUINN and STEELE, JJ., concur.

1-08-1347 & 1-08-1378 (cons.)

| Please Use Following Form: | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT (Front Sheet to be Attached to Each Case) | |
|---|---|---|
| Complete TITLE of Case | JUDITH HIRSCH,                                Plaintiff-Appellee/Cross-Appellant, <br> v. <br><br> OPTIMA, INC., an Illinois corporation,                  Defendant-Appellant/Cross-Appellee, <br> and <br> (JOHN H. KELSEY, COROMANDEL TOWN HOME ASSOCIATION, <br><br>                Defendants.) | |
| Docket No. <br><br> COURT <br><br><br> Opinion Filed | Nos. 1-08-1347 and 1-08-1378 (cons.) <br> Appellate Court of Illinois <br> First District, THIRD Division <br><br> December 9, 2009 <br> (Give month, day and year) | |
| JUSTICES | PRESIDING JUSTICE MURPHY, delivered the opinion of the court: <br><br> Quinn and Steele, JJ.,                             concur [s] <br><br>                           dissent[s] | |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin: <br><br> The Honorable      Martin Agran          , Judge Presiding. | |
| For APPELLANTS, John Doe, of Chicago. <br><br> For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) <br><br> Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. <br><br> Attorney for **Defendant-Appellant/ Cross-Appellee**:          Clausen Miller P.C. <br> Of counsel: Edward M. Kay, Richard M. Kaplan, Joseph J. Ferrini <br> 10 S. La Salle Street <br> Chicago, IL 60603 <br> Phone: (312) 855-1010 <br><br> Attorneys for **Plaintiff-Appellee/ Cross-Appellant**        Milton M. Blumenthal & Associates <br> Of counsel: Michael L. Blumenthal, David J. Piell, Milton M. Blumenthal <br> 77 W. Washington Street, Suite 1720 <br> Chicago, IL 60602 <br> Phone: (312) 372-3566 | |