2024 IL App (1st) 230908-U
Order filed: July 11, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0908

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| STACY YOUNG and INEZ YOUNG, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 2020 L 008354 |
| | ) | |
| UDAY SHANKAR and SHANKU SHANKAR, | ) | Honorable |
| | ) | Catherine A. Schneider, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirmed the denial of plaintiffs' section 2-1401 petition to vacate the DWP of their amended complaint, finding that plaintiffs failed to show due diligence in prosecuting their claims in the circuit court.

¶ 2    This matter arises out of alleged injuries plaintiffs, Stacy Young and Inez Young, suffered while they were tenants in a building owned and managed by defendants, Uday Shankar and Shanku Shankar. Plaintiffs filed an amended complaint against defendants alleging negligence and violations of the Chicago Residential Landlord Tenant Ordinance (CRLTO) (Chicago Municipal Code 5-12-010 *et seq*.), which the circuit court dismissed for want of prosecution. Plaintiffs

subsequently filed a petition pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)) to vacate the dismissal of their amended complaint, which the circuit court denied. Plaintiffs filed a motion to reconsider, which the circuit court also denied. Plaintiffs appeal the denial of their section 2-1401 petition. We affirm.

¶ 3 Plaintiffs originally filed a *pro se* complaint in case number M1 136568 alleging that defendants violated the CRLTO and caused them personal injuries due to their poor upkeep of the apartment (unit) they rented to plaintiffs. An attorney subsequently filed an appearance for plaintiffs and filed an amended complaint alleging only the CRLTO violations, and withdrawing the claims for personal injuries. On October 22, 2019, plaintiffs voluntarily dismissed their complaint.

¶ 4 On August 14, 2020, the instant amended four-count complaint in case number 20 L 8354 was filed by new counsel for plaintiffs. Plaintiffs pleaded in count I that defendants violated section 5-12-080(a)(1) of the CRLTO by commingling plaintiffs' security deposit with defendants' own monies and by failing to provide the correct name of the bank where the monies were deposited. Count II alleged that defendants violated sections 5-12-070 and 5-12-110(a) of the CRLTO by failing to properly maintain the unit's floors, walls, ceilings, plumbing facilities, electrical systems, and common areas. Count III alleged that defendants negligently injured plaintiff Stacy Young by exposing her to toxic mold in the unit and by causing a piece of foil from an exposed lighting fixture to fall into her left eye. Count IV alleged that defendants negligently injured plaintiff Inez Young by exposing her to toxic mold in the unit.

¶ 5 Defendants filed a three-count counterclaim on February 16, 2021. Count I alleged that plaintiffs violated section 040(d) of the CRLTO by flushing excessive amounts of toilet paper and kitty litter down the toilet and they sought recovery of the expenses incurred in repairing the

damage. Count II alleged that plaintiffs violated section 050(a) of the CRLTO by refusing defendants entry into the unit to make the necessary repairs. Count III alleged that plaintiffs owed them unpaid rent in the amount of $10,182.65.

¶ 6    On August 17, 2021, plaintiffs filed an answer to the counterclaim, denying that they flushed excessive amounts of toilet paper and kitty litter down the toilet, or that they refused defendants access to the unit to make repairs, or that they owed unpaid rent.

¶ 7    Defendants issued subpoenas for medical records in August and September 2021. On May 19, 2022, the court entered an order dismissing plaintiffs' complaint and defendants' counterclaims for want of prosecution (DWP)[1], based on "no activity" since September 16, 2021.

¶ 8    On June 28, 2022, plaintiffs filed their section 2-1401 petition to vacate the DWP order. Plaintiffs noted therein that the following three elements must be set forth in a section 2-1401 petition: the existence of a meritorious claim; due diligence in presenting the claim to the circuit court; and due diligence in filing the petition. See *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 109 (2009).

¶ 9    As to the existence of a meritorious claim, plaintiffs alleged that defendants had a duty under the CRLTO and the common law to maintain the unit in a "manner to keep it habitable" and they breached those duties, leading to lung and eye injuries for plaintiffs. As such, the allegations of the claim, if proved, state a meritorious claim for which they are entitled to compensation.

¶ 10    As to due diligence, plaintiffs acknowledged the court's finding that they had not prosecuted the case from September 2021 to May 2022, but they explained that the reason was

---

[1] The order specifically stated "Case dismissed for want of prosecution." The court subsequently clarified in its order denying plaintiffs' motion to reconsider the denial of the section 2-1401 petition that "the entire case, including the counterclaim, was dismissed and disposed of on May 19, 2022."

because they had moved to Los Angeles and some (unidentified) type of "potential" conflict of interest had developed that caused their attorney to consider withdrawing from their joint representation. The potential conflict was not resolved until April 2022. Plaintiffs also contended that despite the apparent lack of activity from September 2021 to May 2022, their attorney had in fact "looked over 10,000 pages of medical records" related to plaintiffs.

¶ 11 Plaintiffs' attorney filed a supporting affidavit largely mirroring the section 2-1401 petition.

¶ 12 Defendants filed a response to plaintiffs' section 2-1401 petition. First, defendants argued that plaintiffs failed to show a meritorious claim in the absence of any evidence whatsoever that either plaintiff had been injured by mold or by a piece of foil falling from a light fixture. Defendants noted:

> "Plaintiffs have no expert to establish the existence of any 'toxic mold' in the apartment. Plaintiffs provide no evidence, whatsoever, of these purported medical treatments/substantial bills. Plaintiffs' attorney proffers no evidence that he ever saw or performed any diligence to investigate such representations. There is nothing but conclusory allegations of mold-induced injury(ies), without evidence mold actually existed."

¶ 13 Defendants also argued that plaintiffs failed to show due diligence in prosecuting their complaint in the circuit court. Defendants offered the following timeline demonstrating plaintiffs' lack of due diligence:

> "On March 2, 2021, Defendants' counsel emailed Plaintiffs' attorney demonstrating demands for medical records related to the claims dating back to January 28, 2021 ***. On June 28, 2021, Defendants' counsel again emailed Plaintiffs' attorney,

this time asserting a Rule 201k demand[], while \*\*\* seeking HIPAA releases for medical records related to the claims and notifying Plaintiffs were in default of answering counterclaims \*\*\*. On August 17, 2021, six (6) months after the demands for medical records began, Plaintiffs obtained valid HIPAA Orders \*\*\*. On October 6, 2021, in light of Plaintiffs' attorney's production of a generic list of all medical providers for the Plaintiffs' past ten (10) years (in the course of Defendants seeking medical records under HIPAA Orders), but in light of Defendants' counsel having been notified of the existence of in excess of 53,000 pages of medical records for both Plaintiffs, Defendants' counsel demanded identification of treating physicians explicitly related to this action's claimed injuries \*\*\*. Plaintiffs' attorney replied that he would "*do what I can to get individual names*." \*\*\* Over the course of the next five (5) months, Plaintiffs' attorney never provided those medical providers' "*individual names*," nor did he obtain a Rule 218 [Case Management Conference] CMC Order from the Court, nor did he otherwise engage in prosecuting the case. On May 19, 2022, this Court entered its Order of Dismissal DWP."

¶ 14     Defendants also argued that plaintiffs' explanation for their failure to prosecute the case was not reasonable: "[N]othing regarding the residence change [to Los Angeles] has any effect on obtaining medical records, communications over phone or email, or the attorney's otherwise engaging in the prosecution of the case in this Court."

¶ 15     Defendants also noted that the alleged, cryptic "conflict of interest" "was not ever advanced or expressed at any time during which Plaintiffs' attorney was failing to engage with this case."

¶ 16     The circuit court conducted a hearing on the section 2-1401 petition on October 12, 2022. Plaintiffs failed to include a transcript of the hearing in the record on appeal.

¶ 17    The circuit court denied the petition on November 28, 2022, finding that plaintiffs failed to exercise due diligence in prosecuting their complaint. The court also noted that plaintiffs had not previously informed it about any conflict of interest affecting the prosecution of the case. Plaintiffs filed a motion to reconsider, which the court denied on April 19, 2003. Plaintiffs filed a timely appeal on May 17, 2023.

¶ 18    Section 2-1401 provides a statutory procedure whereby final orders may be vacated after 30 days from the entry thereof. 735 ILCS 5/2-1401 (West 2022). As we have discussed, to be entitled to relief under section 2-1401, the petitioners must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting the claim or defense to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition. *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d at 109. The quantum of proof necessary to sustain such a petition is a preponderance of the evidence. *Fiala v. Schulenberg*, 256 Ill. App. 3d 922, 929 (1993). Where, as here, the court denies the petition due to the petitioners' failure to exercise due diligence in presenting the underlying claim, we review the court's decision for an abuse of discretion. *Cavalry v. Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10.

¶ 19    Due diligence requires that the section 2-1401 petitioners have a reasonable excuse for failing to act within the appropriate time. *Fiala*, 256 Ill. App. 3d at 929. Section 2-1401 does not relieve the petitioners of their own mistakes or negligence in failing to prosecute their case; petitioners are not entitled to relief unless they show that their failure to prosecute the claim was through no fault or negligence of their own. *Id.* Petitioners are responsible for following the progress of their case. *Estate of Issa v. Egan*, 2023 IL App (1st) 220291-U, ¶ 42 (cited for its precedential authority under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023)).

¶ 20    The circuit court here denied plaintiffs' petition because it determined that they failed to show due diligence in prosecuting their case from September 2021 to May 2022. We agree, as plaintiffs failed to show any reasonable excuse for their failure to act during that time-period. In so holding, we note that in their section 2-1401 petition, plaintiffs provide a litany of reasons for why they failed to prosecute the case *prior to August 2021*. Such reasons include: the outbreak of the COVID-19 pandemic; plaintiffs' difficulty in finding all their medical records that had been requested by defendants; "problems with emails being directed to a spam folder"; and the fact that both plaintiffs moved to Los Angeles during the course of the proceedings. However, the only excuse given for their failure to prosecute their case from September 2021 to May 2022 (the time-period in question) is that:

> "Following August 2021, Inez Young returned to Chicago and Stacy Young remained in Los Angeles and matters developed which created potential conflicts of interest that *would have* required [their attorney] to withdraw from representation of both Stacy and Inez which only got resolved at the end of April 2022 despite an effort by each of the Youngs to find separate and alternative counsel." (Emphasis added.)

¶ 21    Plaintiffs' excuses for failing to prosecute their case from September 2021 to May 2022 were not reasonable. As correctly noted by defendants, plaintiffs' move to Los Angeles did not prevent them from communicating with their attorney via phone or email, nor did plaintiffs explain how their change in residence prevented them from communicating with their doctors and obtaining the requested medical records.

¶ 22    Also, plaintiffs' failure to prosecute the case was not excusable by the existence of some cryptic, potential conflict of interest that supposedly caused plaintiffs' attorney to consider withdrawing. Despite the potential conflict, plaintiffs' attorney apparently *never* withdrew from

representing them and thus had a duty to continue to follow the progress of the case. *Salazar v. Wiley Sanders Trucking Co., Inc.*, 216 Ill. App. 3d 863, 873-74 (1991). Further, "[a] litigant has to follow the progress of his or her case, and a section 2-1401 petition will not relieve a litigant of the consequences of an attorney's negligence." *KNM Holdings, Inc. v. James*, 2016 IL App (1st) 143008, ¶ 22. Plaintiffs have failed to show any reason, let alone any reasonable reason, for why they failed to follow the progress of their case and for why they completely failed to prosecute it from September 2021 to May 2022. Accordingly, the court's finding that plaintiffs failed to show due diligence in prosecuting the case during that time-period was not an abuse of discretion.

¶ 23    Plaintiffs argue that their attorney showed due diligence by "looking over" about 10,000 pages of medical records from September 2021 to May 2022. However, the attorney's affidavit indicates that his record review occurred only after the DWP was entered in May 2022. Even if the record review occurred prior thereto, there is no indication that he ever communicated with the court or with defendants about the record review, nor did he comply with discovery requests seeking pertinent medical records or otherwise prosecute the case on behalf of plaintiffs. Due diligence has not been shown.

¶ 24    Plaintiffs argue on appeal that we should relax the due diligence requirements in light of equitable considerations. We may relax the due diligence requirements only in certain limited circumstances, such as when the petitioners' failure to prosecute their action was the result of some type of fraud or concealment or when some other "unusual circumstances" exists that would render the underlying dismissal order unjust. *Egan*, 2023 IL App (1st) 220291-U, ¶ 44. Plaintiffs here point to no such type of fraud or other unusual circumstance rendering the underlying dismissal order unjust or excusing their failure to show due diligence in prosecuting the case from September 2021 to May 2022.

¶ 25    Before concluding, we note that the court stated in its written order denying the section 2-1401 petition that it had considered the parties' oral arguments at the hearing on the petition. Plaintiffs did not include a transcript of the hearing or an acceptable substitute under Illinois Supreme Court  Rule 323 (eff. July 1, 2017). As the appellants, plaintiffs bore the burden of presenting a sufficient record for review of their claim of error, and in the absence of such a record, we presume that the court's order was in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Thus, plaintiffs' failure to provide a complete record is an additional reason for affirming the circuit court.

¶ 26    For all the foregoing reasons, we affirm the circuit court.

¶ 27    Affirmed.